STATE of Missouri, Respondent,

v.

Antoine TERRY, Appellant.

No. SC 90332.

Supreme Court of Missouri,
En Banc.

Feb. 10, 2010.

---

Kent Denzel, Office of the Public Defender, Columbia, for Appellant.

Chris Koster, Atty. Gen., James B. Farnsworth, Asst. Atty. Gen., Jefferson City, for Respondent.

MICHAEL A. WOLFF, Judge.

Antoine Terry, age 17 at the time of the alleged offense, was convicted of statutory rape in 2008. The alleged victim, A.W., age 12 at the time, said Terry had sex with her in the summer of 2007. Terry denied having sex. Terry was arrested and put on trial for first-degree statutory rape.[1] At trial, A.W. was pregnant and testified that Terry was the father because she had not had sex with anyone else during the summer of 2007.

The credibility of A.W.'s testimony that Antoine Terry had sex with her—including her contention that only Terry could be the father of her unborn baby—seems central to the case against Terry. The centrality of this contention is well illustrated

---

1. Section 566.032, RSMo Supp.2007. All statutory references are to RSMo Supp.2007 unless otherwise indicated.

by the prosecutor's opening statement, final argument and argument at sentencing [2]. The prosecutor in final argument said that a lot of cases involve a "he-said-she-said" situation of "one person's word versus the other person's word" and that there is "no corroborating evidence." But, in this case, the prosecutor emphasized, "We have the fact that [A.W.]'s pregnant now. We have the fact that she told you he was the one she had sex with last summer when she got pregnant."

The only problem with the prosecutor's argument is that a DNA test done after the child's birth shows that Antoine Terry is not the father of A.W.'s child, assuming the test is accurate.

As a result, Terry has filed a motion in this Court to remand the case to circuit court to consider the newly discovered evidence that was not available at trial. The state opposes the motion and argues that the judgment should be affirmed.

### Facts and Procedural History

The trial testimony was that Terry met A.W. in the summer of 2007 while Terry was in Jefferson City visiting his sister. On August 10, 2007, A.W. and Terry were at Terry's sister's house; when A.W. did not return home, her mother called the police. A.W. denied to police that she had a sexual relationship with Terry but did tell the police that he had penetrated her vagina with his fingers and had attempted to have sexual intercourse with her that night.

The next day, a detective with the Jefferson City police department interviewed Terry. According to the detective, when he told Terry that he was investigating a rape complaint made by a 12–year–old girl,

Terry responded: "Oh, [A.W.]?" Terry then denied penetrating A.W.'s vagina with his fingers or having sexual intercourse with her the night of August 10. The detective testified that Terry said that he previously had sex with A.W. on August 7, that A.W. was a willing participant and that Terry did not use a condom. The detective testified that when he asked Terry why he had done it, Terry said he was only 17 and thought that he would get in trouble only if he was 18. The detective testified as to his memory of this conversation; there was no recorded statement or confession from Terry. Terry denies that he admitted having sex with A.W.

A.W. underwent a SAFE examination August 11, 2007, that revealed injuries to her hymen and surrounding tissue, indicating intercourse in the previous 72 hours. The test also revealed that A.W. was pregnant. After the examination, A.W. talked to police again and changed her story. She said that she had an ongoing sexual relationship with Terry from May through August 2007. At trial, A.W. testified that their relationship became sexual, that she and Terry had consensual sex more than six times during the summer and that Terry was the only one with whom she had had sex.

At trial, Terry denied having sex with A.W. Terry testified that the first time he met A.W. was July 29, 2007 at his niece's birthday party. He denied telling the Jefferson City detective that he had sex with A.W. but testified that he told the detective that he "almost had sex with her" August 7, 2007. Terry's sister testified that on August 7, 2007, she saw Terry in the living room with company and without a shirt and she told them to go outside. Terry did admit that he told the detective

**2.** At sentencing, the prosecutor argued for a prison sentence because the pregnancy showed not only Terry's guilt but that he

called the victim a liar and "sentenced" the victim and her family to raising his child for 18 years.

he thought it was okay to mess around with A.W. because he was only 17.[3] The jury convicted Terry of first-degree statutory rape, and the court sentenced him to a seven-year prison term. Terry appealed.

Between the time of trial and sentencing, A.W. gave birth to the child. A subsequent DNA test—not a part of the trial record but a copy of which is attached to Terry's motion on appeal—shows a zero-percent chance that Terry is the father.[4]

After receiving the results of the DNA test, Terry filed a motion to remand due to newly discovered evidence when the case was pending in the court of appeals. Following opinion in the court of appeals, this Court granted transfer. The Court has jurisdiction. Mo. Const. Art. V, section 10. Terry's motion to remand is also before this Court.

## Analysis

■ The overriding issue is what this Court should do to ascertain whether there may be a miscarriage of justice—a conviction based largely on perjured testimony. The state argues that it is improper for this Court to remand the case based on new evidence that is not in the record and that even if the Court does consider it, its only value is to contradict a single, "immaterial" statement by A.W.—that she had had sex with only one person that summer. It also contends that, even if A.W.'s statement has lost its probative value, it still is corroborated by additional evidence.

Terry argues that he should be discharged from his sentence or in the alternative, that this Court should remand his case to the circuit court for a hearing on the newly discovered evidence. According to Terry, remand is necessary because the DNA test establishes that: 1) Terry did not have sex with A.W. because she testified that she only had sex with one person during the summer of 2007; or 2) that A.W. lied about not having sex with anyone other than Terry, which is crucial evidence that the jury did not hear, and that they must hear, in determining A.W.'s credibility.

■ The DNA test report result, if accurate, does not exonerate Terry. It does, however, cast serious doubt on the validity of the conviction. The state acknowledged at oral argument that it has done nothing to investigate whether the DNA test report is accurate.[5]

■ Terry's motion is not within the time limits for filing a motion for a new trial pursuant to Rule 29.11(b) because that limit is 25 days after the verdict.[6]

3. Actually, it is not okay. "A person commits the crime of statutory rape in the first degree if he has sexual intercourse with another person who is less than fourteen years old." Section 566.032.1.

4. The test was performed by Paternity Testing Corporation of Columbia, was signed by the laboratory Co–Director Karol S. Elias, Ph.D., and was notarized. The report stated as its conclusion that "[t]he alleged father, Antoine Terry, is excluded as the biological father of the child, [A.W.], because they do not share genetic markers ... [listing the markers]" and that the probability of paternity is zero-percent.

5. The ethical norm that the state attorney's role is to see that justice is done—not necessarily to obtain or to sustain a conviction—may suggest that a different course of action may have been appropriate. See Rule 4–3.8. Cf. Giglio v. United States, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972).

6. Rule 29.11(b) requires a motion for a new trial to be filed within 15 days after the verdict is returned. Upon application of the defendant within those 15 days and for good cause shown the court may extend the time for filing the motion for an additional period not to exceed 10 days.

Once the time for filing a motion for a new trial has passed, the Missouri rules have no provision for the granting of a new trial based on newly discovered evidence even if the evidence is available prior to sentencing.[7] Additionally, new evidence that is not in the record should not be considered on appeal. *Benton v. State*, 128 S.W.3d 901, 904 (Mo.App.2004). Generally, this Court will not remand a case before an appeal is concluded if the lone fact of newly discovered evidence is not enough to grant a new trial. But an appellate court has the inherent power to prevent a miscarriage of justice or manifest injustice by remanding a case to the trial court for consideration of newly discovered evidence presented for the first time on appeal. *Id.* An appellate court will exercise this power in its discretion. *State v. Davis*, 698 S.W.2d 600, 603 (Mo.App.1985).

■ To obtain a new trial on the basis of newly discovered evidence, this Court has held that the movant must show:

1. The facts constituting the newly discovered evidence have come to the movant's knowledge after the end of the trial;

2. Movant's lack of prior knowledge is not owing to any want of due diligence on his part;

3. The evidence is so material that it is likely to produce a difference result at a new trial; and

4. The evidence is neither cumulative only nor merely of an impeaching nature.

*State v. Whitfield*, 939 S.W.2d 361, 367 (Mo. banc 1997).

The motion in this case appears to satisfy each element. The first and second elements are met because the results of the DNA test did not become known to Terry until several months after trial and he had no way of determining the paternity during trial as A.W. was still pregnant with the child. The third element is satisfied because, as discussed below, the new evidence casts serious doubt on Terry's conviction and is material to proving the key element of the crime of statutory rape, that Terry and A.W. had sex because the victim was pregnant and testified that she had sex only with Terry. The fourth element also is satisfied. Although the DNA evidence would impeach A.W.'s testimony, it does not "merely" impeach—it conclusively shows that she perjured herself. Generally, the jury decides the effect of impeachment evidence in making its factual conclusions and, even with impeachment evidence, still may choose to believe the witness. But here, the jury has nothing to weigh because, if verified, the DNA test proves that A.W. committed perjury as to a material part of her testimony.

There are two notable cases in the court of appeals in which remand was ordered based on new evidence. In *State v. Mooney*, 670 S.W.2d 510, 511 (Mo.App.1984), the defendant was convicted of child molestation with the statements of the alleged victim being the only evidence in the case. *Id.* at 511. Mooney appealed and discovered new evidence during the appeal but after his time to file a motion for a new trial had expired. *Id.* at 512. The new evidence was a taped statement of the alleged victim admitting that his testimony was false and that he had made up the

---

**7.** The Federal Rules of Criminal Procedure allow for a motion for a new trial based on newly discovered evidence to be filed within three years of the verdict. Rule 33(b)(1). The rule further states that "[i]f an appeal is pending, the court may not grant a motion for a new trial until the appellate court remands the case." *Id.* As such, the federal rules specifically allow an appellate court to remand the case based on newly discovered evidence. Missouri's rules do not have this provision.

story. *Id.* The court determined that it had "the inherent power to prevent miscarriages of justice in a proper case by remanding the case to the trial court with instructions that the appellant be permitted to file a motion for a new trial upon the grounds of newly discovered evidence." *Id.* at 515–516. In *Mooney* there was sufficient evidence at trial to support the conviction, but the newly discovered evidence would impeach that evidence. The court of appeals determined it was appropriate for the trial court to consider the new evidence in ruling on a motion for a new trial.

A review of the post-*Mooney* case law indicates that courts have interpreted *Mooney* to stand for the proposition that a remand to the trial court so an accused can file a motion for a new trial on the ground of newly discovered evidence is only appropriate in "exceptional circumstances" when the newly discovered evidence will exonerate the accused. *State v. Hill,* 884 S.W.2d 69, 75–77 (Mo.App.1994).[8] But the evidence in *Mooney* did not completely exonerate the defendant; it impeached the prior testimony of the victim witness. The victim's testimony, even if impeached by the prior inconsistent statement, still would support a conviction if the jury believed the testimony. *Mooney* shows that there are exceptional circumstances in which impeachment is reason to remand to the trial court to grant a new trial at the appellate court's discretion. But in this case, the DNA test, if accurate, shows that the victim witness lied about material facts.

In the other court of appeals case involving a remand for newly discovered evidence, *State v. Williams,* 673 S.W.2d 847 (Mo.App.1984), the defendant was convicted of first-degree robbery. Though the court did not describe the evidence, it stated that after the defendant's time to file a motion for a new trial had expired, there was newly discovered evidence that, if believed, would "completely exonerate the defendant." *Id.* at 847. The defendant filed a motion requesting that jurisdiction be returned to the trial court for a hearing on a motion for a new trial based on the newly discovered evidence. In *Williams,* unlike in the present case, the state agreed with the request. The court stated: "Mindful though we are on the exclusivity of this Court's jurisdiction once a notice of appeal is properly filed, we are equally cognizant of the perversion of justice which could occur if we were to close our eyes to the existence of the newly discovered evidence." *Id.* at 848.

Had Terry discovered the results of the DNA test within 15 days of the verdict, he could have filed a motion for a new trial based on newly discovered evidence. This Court agrees with *Mooney* that an appellate court has the "inherent power to prevent miscarriages of justice" and with *Williams* that it is the Court's responsibility to avoid a "perversion of justice."

The jury in Terry's case heard evidence of a statutory rape in which the victim was visibly pregnant. That victim testified that Terry was the only person who could have impregnated her. If the DNA test is accurate, A.W. had sexual relations with someone else, contrary to her testimony. Her testimony appears to be false, and the jury had no opportunity to weigh the evidence and determine the facts and credi-

8. *See also State v. Bransford,* 920 S.W.2d 937, 949 (Mo.App.1996); *State v. Dorsey,* 156 S.W.3d 791, 798 (Mo.App.2005); *State v. Clark,* 112 S.W.3d 95, 99 (Mo.App.2003); *State v. Gray,* 24 S.W.3d 204, 209 (Mo.App. 2000). In this case, if the test is verified, there is no question that a material portion of testimony was perjured and that a new trial is likely to produce a different result.

bility of the witnesses with the inclusion of the DNA test in evidence. Nor did the prosecutor, defense attorney and trial judge have the benefit of the DNA evidence at the time of the motion for a new trial.

■ Terry also may obtain his desired relief if he seeks a new trial on the ground of perjury. Successful motions for a new trial on the ground of perjury require a showing that the witness willfully and deliberately testified falsely. *M.E.S. v. Daughters of Charity Servs. of St. Louis*, 975 S.W.2d 477, 482 (Mo.App.1998). The court, "if satisfied that perjury had been committed and that an improper verdict or finding was thereby occasioned,"[9] could grant a new trial. Yet, in the cases in which this relief was considered, the moving parties filed a timely motion for a new trial on the basis of perjury.[10] Though the motion ultimately was not granted in *State v. Coffman*, 647 S.W.2d 849, 851 (Mo.App.1983), due to a finding of no perjury, the court did indicate that, if the court had found perjury, a new trial could have been granted even though the motion was filed out of time.[11] Nonetheless, in this case, because all the *Whitfield* factors are met, it is appropriate for this Court to give Terry the relief he requests—a remand to the trial court so that he can file a motion for a new trial based on newly discovered evidence.

This is an unusual case because of the subsequently obtained DNA evidence. Just the fact that there is newly discovered evidence during an appeal usually is not enough for a new trial, but here, the newly discovered forensic evidence, if verified, appears to be central to the case and shows that Terry was convicted with the aid of false testimony from the alleged victim.

## Conclusion

*Mooney* involved impeaching evidence that was newly discovered. 670 S.W.2d at 512. That is the case here; moreover, the new evidence, if the DNA test result is valid, is not merely impeaching but shows that a material portion of the witness' testimony was perjured. The unusual circumstances of subsequently obtained DNA evidence cause this Court, in its discretion, to afford the parties and the circuit court an opportunity to consider the evidence in a motion for a new trial. *Mooney* and *Williams* granted relief that Terry requests in his motion to remand, though the two cases differed in their remand orders. In *Mooney*, the court remanded the case to the circuit court to allow the defendant to file a motion for a new trial based on the new evidence; if the new trial were granted, the court of appeals would dismiss the appeal. *Id.* at 516. In *Williams*, the court dismissed the appeal and remanded the case to the circuit court to allow the defendant to move for a new trial. If a new trial was not granted, the court said the defendant could file a notice of appeal and the court would reinstate the appeal. 673 S.W.2d at 848. There was little difference in effect because in each case, if defendant was aggrieved by the trial court's order and judgment, the courts left open reinstating the appeal.

9. *Donati v. Gualdoni*, 358 Mo. 667, 216 S.W.2d 519, 521 (1949).

10. *See M.E.S.*, 975 S.W.2d 477; *Calvin v. Lane*, 297 S.W.2d 572 (Mo.App.1957); *Pitzman's Co. of Surveyors and Engineers v. Bixby and Smith, Inc.*, 338 Mo. 1078, 93 S.W.2d 920 (1936).

11. Yet, in *Coffman*, though the motion was filed out of time, it was filed still before sentencing, and the court specifically indicated that, if perjury had been found "a new trial could have been granted, with Coffman's consent, prior to the sentencing...." *Id.* at 851.

In this case, Terry's appeal is in this Court because transfer was granted. The appropriate form of relief here is that granted in *Williams,* a remand and dismissal of the appeal. The Court will remand to the circuit court for Terry to file a motion for a new trial based on the new evidence. If the motion for a new trial is denied, Terry can file a notice of appeal and ask that the appeal in this Court be reinstated.[12]

The case is remanded to the circuit court. The appeal is dismissed.

All concur.

12. There is no need to deal with the points of trial error that Terry raises in this appeal. These points may be considered if there is a further appeal after the circuit court's decision on this remand.