STATE of Missouri, Plaintiff–
Respondent,

v.

James Douglas SHINN, Defendant–
Appellant.

No. SD 31919.

Missouri Court of Appeals,
Southern District,
Division Two.

July 26, 2013.

Kevin L. Schriener, Clayton, MO, for Appellant.

Evan J. Buchheim, Jefferson City, MO, for Respondent.

DON E. BURRELL, J.

A jury found James Douglas Shinn ("Defendant") guilty of the attempted forcible rape of his estranged wife ("Victim"). *See* section 566.030.[1] After hearing evidence at the subsequent penalty phase of the trial, the jury recommended a six-year sentence. The trial court subsequently denied original and supplemental motions for a new trial and entered a judgment of conviction that imposed the six-year sentence recommended by the jury.

Defendant now appeals, claiming the trial court committed reversible error by: 1) imposing its six-year sentence based upon a "mistaken belief" that it was bound by the jury's sentence recommendation and had no authority to impose a lesser sentence; 2) informing the jury in response to its question that Defendant "would have to serve 85% of his sentence and would receive credit for time already served"— information not included in section 557.036.3;[2] 3) denying Defendant's motion for acquittal or a new trial after the close of the evidence because the fact that the jury found Defendant not guilty of forcible

sodomy necessarily meant there was insufficient evidence of attempted rape; and 4) denying Defendant's supplemental motion for new trial based on "newly discovered evidence" acquired "from [Victim's] own sister that [Victim] had 'cried rape' in the past" because, if presented, it would have likely produced a different result.

Finding no merit in any of these claims, we affirm.

## Facts and Procedural Background

■ We view the evidence and all reasonable inferences that may be drawn from it in the light most favorable to the verdict, and we disregard all contrary evidence and inferences. *State v. Belton*, 153 S.W.3d 307, 309 (Mo. banc 2005). Our summary of the evidence relevant to Defendant's claims is in accord with this principle.

Defendant and Victim were husband and wife. They separated in February 2010, and Victim and her children eventually moved into the home of her sister's fiancé,

---

1. Forcible rape occurs when a person attempts to have "sexual intercourse with another person by the use of forcible compulsion." Section 566.030.1. Forcible compulsion includes "[p]hysical force that overcomes reasonable resistance[.]" Section 556.061.12(a). An "attempt" occurs when a person "does any act which is a substantial step towards the commission of the offense[,]" and "[a] 'substantial step' is conduct which is strongly corroborative of the firmness of the actor's purpose to complete the commission of the offense." Section 564.011.1. Defendant was also charged with forcible sodomy, but the jury found him not guilty of that offense. All statutory references are to RSMo Cum. Supp.2012. All rule references are to Missouri Court Rules (2013).

2. Section 557.036.3 provides:

If the jury at the first stage of a trial finds the defendant guilty of the submitted offense, the second stage of the trial shall proceed. The issue at the second stage of the trial shall be the punishment to be assessed and declared. Evidence supporting or mitigating punishment may be presented. Such evidence may include, within the discretion of the court, evidence concerning the impact of the crime upon the victim, the victim's family and others, the nature and circumstances of the offense, and the history and character of the defendant. Rebuttal and surrebuttal evidence may be presented. The state shall be the first to proceed. The court shall instruct the jury as to the range of punishment authorized by statute for each submitted offense. The attorneys may argue the issue of punishment to the jury, and the state shall have the right to open and close the argument. The jury shall assess and declare the punishment as authorized by statute.

who—over Victim's objection—also allowed Defendant to move into the house.

On October 12, 2010, Victim took a shower in preparation for her afternoon work shift. Because her work clothes were still drying in the dryer when she got out of the shower, she "wrapped up . . . in a blanket and a towel." When Victim, thus attired, sat down at the computer desk, Defendant appeared to be asleep on the couch. Defendant got up from the couch and approached Victim, saying, "Satan is putting bad things in my head." Victim told Defendant to "go for [a] walk, get out of here. Get away." Victim described what happened next as follows:

> And [Defendant] followed me into the kitchen and he tried to hug me. And then he pushed me against the wall and I kept trying to push him away. And then he took me into the living room and he pulled the blanket and the towel off of me and he held me down. And he put his fingers inside me. And I pushed him away. I pushed his fingers away.

Victim continued to plead with Defendant to stop; she repeatedly said, "Don't do this."

Defendant removed his pants and "tried to put his penis in [Victim]." Victim used her hands to "block" Defendant, and she used her legs to push "back away from him." She "finally screamed because [she] knew [she] couldn't fight him anymore." Her screaming awakened one of the children. When the child came into the room and asked Defendant what he was doing,

Victim took advantage of the interruption to get up, grab her phone, run into another room, and call a friend for help. Defendant "jimm[ied] the lock open" on the door, and Victim hung up the phone.

Sergeant Worley, an officer with the Carterville Police Department, soon arrived. Defendant came to the door and said that he "had been verbally arguing" with Victim and "[Victim] didn't want [Defendant] there." Defendant said Victim was in the shower, but he called for her. When Sergeant Worley saw Victim, she was "[e]xtremely distraught[,]" "trembling, shaking[,]" "crying[,]" and "[s]he had difficulty speaking[.]" Victim "had difficulty standing and walking." In addition to being sore, Victim had "some bruises and some rug burn on [her] back" as a result of the incident.

Defendant told Sergeant Worley, "I shouldn't have done what I done." Defendant filled out a written statement to that effect, which also stated "he shouldn't have done what he had done and that he was going to be counseling [sic]."[3] Defendant never indicated that Victim consented to "having sexual relations with" him that day.

The following day, Defendant was interviewed by Carterville Police Department Deputy Chief John Redden. Defendant told Deputy Chief Redden "that he had done something wrong." Defendant explained "that he had tried to force himself on [Victim] . . . and he was real sorry for what he had done." Defendant said he did

---

**3.** The record shows that Defendant's written statement to Sergeant Worley was admitted into evidence at trial as Exhibit 2. Defendant did not include the exhibit in the record on appeal. In fact, none of the exhibits referenced in this opinion have been deposited with this court. "It is Appellant's duty to compile the record on appeal which should contain all of the exhibits and evidence necessary for this Court's determination of the questions presented." *State v. Holman*, 230 S.W.3d 77, 79 n. 4 (Mo.App. S.D.2007) (citing Rule 30.04). "When an exhibit is omitted from the transcript and is not filed with the appellate court, the intendment and content of the exhibit will be taken as favorable to the trial court's ruling and as unfavorable to Defendant." *State v. Creech*, 983 S.W.2d 169, 171 (Mo.App. E.D.1998).

not penetrate Victim. A written statement Defendant provided to Deputy Chief Redden was admitted into evidence as Exhibit 4.

Defendant testified at trial. He said that on the day in question he had tried to "coax [Victim] into having sex with [him.]" Defendant admitted Victim said something like "[n]o, not right now." Defendant said he tried to touch Victim's vagina, "but it didn't happen." He admitted that Victim got away from him when she "kind of just pushed [him] back" as Defendant "was following behind her." Defendant said that before Victim "could close the door[, he] shoved [the door] open real hard and slammed it into the wall. And [he] started yelling at her."

Defendant said that his previous statement to the police that he "shouldn't have done what [he] did" referred to "tr[ying] to have sex with [Victim] because she want[ed] to move on and be with somebody else[.]" Defendant admitted that his statement to Deputy Chief Redden included that he "tried to force [his] wife" to have sex with him, but he said that by "force" he meant "begging and pleading." Defendant acknowledged that he did not write "begging and pleading" in his written statement.

As earlier noted, the jury found Defendant guilty of attempted forcible rape in the first portion of his bifurcated trial. The State did not present any evidence during the subsequent sentencing phase of the trial. The prosecutor argued, outside the presence of the jury, "that [defense counsel] should not be permitted to inform the jury with respect to [Defendant] being required to serve eighty-five percent of … any sentence that [is] imposed." [4] Defense counsel stated that she did not "intend to touch on the eighty-five percent." When the jury was brought back into the courtroom, Defendant testified at the sentencing phase.

During its sentencing deliberations, the jury sent the court a written question later "mark[ed] as Court's Exhibit A." The trial court read the question aloud as stating, "Are we able to know how much of the time he will serve from what we recommend?" The following record was made in response to the jury's question.

[Assistant Prosecutor]: You must be guided by the instructions is, I think, all we can do.

[Defense Counsel]: The problem is there was no argument on that.

[Trial Court]: You know, this one bothers me a lot.

[Assistant Prosecutor]: Do you feel like they should be informed?

[Trial Court]: Well, in a normal case, other than these, obviously we would say no because we don't know.

[Defense Counsel]: Right. This one we do know.

[Trial Court]: In this case we do know that he has to serve a minimum of eighty-five percent of the sentence.

---

4. Section 558.019.3 provides, in pertinent part:

> [A]ny offender who has … been found guilty of a dangerous felony as defined in section 556.061 and is committed to the department of corrections shall be required to serve a minimum prison term of eighty-five percent of the sentence imposed by the court or until the offender attains seventy

years of age, and has served at least forty percent of the sentence imposed, whichever occurs first.

A dangerous felony includes "attempted forcible rape if physical injury results[.]" Section 556.061.8. Defendant asserts no error regarding the applicability of this sentencing provision.

[Defense Counsel]: We were just talking about that because it is statutorily required.

[Trial Court]: Correct.

[Second Assistant Prosecutor]: At the same time they won't know that he'll get credit for the time he's already served and things like that so if they say five years they may want eighty-five percent of the five years.

[Defense Counsel]: But that percentage of time that he serves, whether it comes off the front or the back, is technically up to Probation and Parole.

[Assistant Prosecutor]: Is there any law on it, Judge? What do they tell you at Judge school?

[Trial Court]: Well, their big emphasis last time at Judge school was making sure—and we've got some problems with that—making sure that when people do guilty pleas they understand that they're going to have to serve eighty-five percent. In fact, Judge Crane just came up with a whole list of those because that's getting cases thrown back at us now. But, no, we don't talk about jury sentencing because nobody does it.

I don't want to blow this case at this point because I think it's a clean case. I'm going to write on here that the law requires that he serve eighty-five percent of any sentence that's assessed against him - a minimum of eighty-five percent. I'm afraid if I don't do that that it will come back on us.

[Assistant Prosecutor]: I will defer to your wisdom.

[Trial Court]: I don't know what the law is. I don't think there is any law on it.

[Defense Counsel]: I don't believe there is either, Judge.

[Assistant Defense Counsel]: There's probably not.

[Trial Court]: I'll show that the law requires that [Defendant] serve a minimum of eighty-five percent of any sentence imposed. And if you'll [presumably addressing the bailiff] hand that back to [the jury], please.

As indicated by this exchange, defense counsel lodged no objection to the trial court's answer to the jury's question.

The jury subsequently sent back a second inquiry—which the trial court marked as "Court's Exhibit B"—and the following colloquy occurred.

[Trial Court]: Court's Exhibit B: Will he get credit for time served for being in Jasper County? If so, how much?

[Assistant Prosecutor]: He will.

[Defense Counsel]: He will get credit for it.

[Assistant Prosecutor]: Yes.

[Trial Court]: He will get credit for any time spent in custody on this charge. I am not sure of how much time that would be. Is that sufficient?

[Assistant Prosecutor]: Yes.

[Trial Court]: Court will be in recess.

The jury eventually returned a verdict that assessed "the punishment for Attempt to Commit Forcible Rape at *Imprisonment for a term of six [ (6) ] years* " (italics used to indicate the hand-written text inserted by the jury). The trial court accepted the verdict and granted Defendant an "additional fifteen [5] days to file after

5. Rule 29.11(b) requires the motion for new trial to be "filed within fifteen days after the return of the verdict[,]" and it permits one extension for an "additional period not to exceed ten days."

trial [m]otions, that would be a total of twenty-five."

Defendant subsequently filed his "Motion for Judgment of Acquittal or in the Alternative for a New Trial" ("new trial motion") on February 8, 2012. Sixteen days later, and prior to Defendant's sentencing, Defendant filed a "Supplemental Motion for a New Trial—Newly Discovered Evidence" ("supplemental new trial motion") based upon a text message purportedly sent from Victim's sister to Defendant's mother ("Mother") and forwarded by email to defense counsel on February 22, 2012.[6] At Defendant's subsequent sentencing hearing, defense counsel asked leave for the supplemental new trial motion to be considered out of time as it was filed "as quickly as [she] could get it filed." The trial court took up and denied both motions for new trial.

After overruling both motions, the trial court asked if defense counsel had "[a]nything else you wish to say in aid of sentencing[.]" Defense counsel then submitted "a packet of letters" and presented the testimony of Mother and Defendant. At the conclusion of that presentation, the following exchange occurred.

[Assistant Prosecutor]: Your Honor, the State is asking that the Court follow the recommendation of the jury and sentence [Defendant] to the [Department of Corrections ("DOC)"] for six years.

[Trial Court]: Anything else from either side?

[Defense Counsel]: Your Honor, we would ask the Court to sentence [De-

---

6. The supplemental new trial motion made no reference to any exhibit or affidavit; the body of the motion simply stated:

Comes now the Defendant, by and through his attorney, and requests this Court to grant his request to supplement his motion for a new trial based [on] newly discovered evidence. In support of this request and motion the Defendant states the following:

1. The facts constituting the newly discovered evidence have come to [Defendant's] knowledge after the end of the trial.

 a. Defense counsel was contacted by [Mother] on February 22, 2012 via e-mail regarding statements made by [Victim's sister].

 b. The statements, made via text message, were unknown to Defense counsel until February 22, 2012.

2. [Defendant's] lack of prior knowledge is not owing to any want of due diligence on his part[.]

 a. Defense counsel had, prior to trial, attempted to contact [Victim's sister] through the use of MSPD Investigator Patrick Knapp.

 b. Investigator Knapp made multiple attempts to locate [Victim's sister's] whereabouts and was unable to track her down at any of the potential locations.

 c. Defendant had indicated that he had a possible phone number for [Victim's sister] but it was never produced and contact was never made with her.

3. The evidence is so material that it is likely to produce a differen[t] result at a new trial.

 a. The information contained in the text messages provided to [d]efense counsel state that [Victim] has claimed this before.

 b. This would likely produce a different result at trial because the nature of the sexual relationship between [Defendant] and [Victim] was in question. What [Defendant] took as an attempt to have sex, [Victim] was [sic] "crying rape."

 c. This information would also be an area that the defense would have been able to question [Victim] about for impeachment purposes and the jury likely could have found her less credible because of this.

Wherefore, [Defendant] requests the [trial c]ourt to allow this supplement to his [new trial motion] and to grant that [new trial motion] based on the information contained in the original motion and in this supplemental [new trial] motion.

fendant] to a term in the [DOC] for five years. He has no prior criminal history, as you heard at the trial, and that's what we're basing our request on.

[Trial Court]: I understand he has no prior history but that's the sentence the jury gave.

Defense counsel voiced no objection in response to the trial court's final statement. The trial court then imposed the six-year sentence recommended by the jury. This appeal timely followed.

### Analysis

Defendant acknowledges that his first two points—which challenge Defendant's sentence and the trial court's responses to the jury's questions during sentencing deliberations—were not properly preserved for review. As a result, Defendant asks us to review the claims for plain error. For ease of analysis, we will wait to address Defendant's plain-error claims until after we have considered his third and fourth points. Those points challenge, respectively, the sufficiency of the evidence to support his conviction and the trial court's denial of Defendant's supplemental new trial motion.

### Point III—Sufficient Evidence of Attempted Forcible Rape

When the sufficiency of the evidence is challenged, we "determine whether sufficient evidence permits a reasonable juror to find guilt beyond a reasonable doubt. The evidence and all reasonable inferences therefrom are viewed in the light most favorable to the verdict, disregarding any evidence and inferences contrary to the verdict." *State v. Belton*, 153 S.W.3d 307, 309 (Mo. banc 2005).

We "will not weigh the evidence anew since 'the fact-finder may believe all, *some,* or none of the testimony of a witness when considered with the facts, circumstances and other testimony in the case.'" *State v. Freeman*, 269 S.W.3d 422, 425 (Mo. banc 2008) (quoting *State v. Crawford*, 68 S.W.3d 406, 408 (Mo. banc 2002) (emphasis added)). And "[t]he reliability, credibility, and weight of witness testimony [are] for the jury to decide." *State v. Bayless*, 369 S.W.3d 115, 118 (Mo. App. W.D.2012). "Circumstantial evidence is afforded the same weight as direct evidence." *State v. Hutchison*, 957 S.W.2d 757, 767 (Mo. banc 1997).

Defendant's third point contends that because the jury found Victim's testimony "insufficient to support the forcible sodomy charge" (based on the claim that Defendant inserted his fingers into Victim's vagina), the evidence "was likewise insufficient to support the attempted rape charge arising out of the same incident." Although Defendant acknowledges that it is the jury's prerogative to determine the reliability and credibility of witnesses, he nonetheless argues that "the jury's verdict depended solely on the credibility of [Victim's] testimony" and "the jury did not believe [Victim]" because, despite her testimony to the contrary, the jury acquitted Defendant of forcible sodomy.

Defendant seemingly suggests that the jury's ability to believe some, but not all, of Victim's testimony is inapplicable here because Victim's testimony required corroboration. The general rule is that a victim's testimony alone is sufficient to sustain a rape conviction. *State v. Harris*, 620 S.W.2d 349, 353 (Mo. banc 1981). An exception to the general rule (which is often asserted but seldom supported[7]) re-

---

7. An application of the "corroboration rule" was not found to be appropriate in any of the cases cited in Defendant's brief. For a substantive discussion of our court's most recent

quires corroboration of a victim's testimony when "the victim's testimony is so contradictory and in conflict with physical facts, surrounding circumstances[,] and common experience, that its validity is thereby rendered doubtful." *Id.*

Here, Defendant does not identify any inconsistent testimony from Victim that might make the corroboration exception applicable. And he does not identify any required element of the attempted rape offense that lacks evidentiary support. The jury was entitled to believe that Defendant was unsuccessful in penetrating Victim's vagina with his fingers but believe Victim's testimony that Defendant attempted to forcibly rape her by ignoring her pleas to stop after he pushed her against a wall, pulled her blanket and towel off, took his pants off, held her down, and tried to put his penis in her vagina. Point III is denied.[8]

### Point IV—Defendant Did Not Exercise Due Diligence Regarding "New Evidence"

▮ Defendant's fourth point asserts that the trial court abused its discretion in denying the supplemental new trial motion because "new facts"—characterized by Defendant as evidence that Victim's sister claimed that "[V]ictim had 'cried rape' in the past"—"were so material that they would likely have produced a different result had they been presented at trial." [9]

▮ Normally, we review the denial of a motion for new trial for an abuse of discretion. *State v. Stewart,* 313 S.W.3d 661, 665 (Mo. banc 2010). "An abuse of discretion occurs when the trial court's ruling is clearly against the logic of the circumstances then before the court and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration." *Id.*

Here, the State argues that Defendant's claim is not cognizable in this appeal because the supplemental new trial motion was filed too late, quoting *State v. Skillicorn,* 944 S.W.2d 877, 896 (Mo. banc 1997) ("Once the time within which to file a motion for new trial has expired, a remedy no longer lies through direct appeal") (*overruled on other grounds by Joy v. Morrison,* 254 S.W.3d 885 (Mo. banc 2008)).

Defendant counters with an assertion that his new evidence claim was preserved because the trial court took up and ruled on the supplemental new trial motion. His fallback position is that if the "failure to include the exact language of the text mes-

---

questioning of the continuing viability of the rule, see *State v. Peters,* 186 S.W.3d 774, 778–80 (Mo.App. W.D.2006), and *State v. Griffith,* 312 S.W.3d 413, 424–25 (Mo.App. S.D.2010).

**8.** And while Victim's testimony alone was sufficient to convict Defendant of attempted forcible rape, the jury also heard Defendant's admission to a police officer that he tried to force Victim to have sex with him and Sergeant Worley's description of Victim as physically injured and "extremely distraught."

**9.** Defendant's brief elaborates on the information by presenting a five-sentence quotation of an apparent text message allegedly sent from Victim's sister to Mother, but Defendant provides no citation to the record for this material. Generally, "[s]tatements asserted in a party's brief which are not supported by the record on appeal supply no basis for appeal[,]" *State v. Coleman,* 263 S.W.3d 680, 682 (Mo.App. S.D.2008), and "new evidence that is not in the record should not be considered on appeal[,]" *State v. Terry,* 304 S.W.3d 105, 109 (Mo. banc 2010); *see also State v. Mooney,* 670 S.W.2d 510, 512 and 516 (Mo. App. E.D.1984) (appellant's motion for leave to file exhibits concerning newly discovered evidence with the appellate court was denied "because it [was] not properly part of the record on appeal").

sages or affidavits in the motion is insufficient to preserve this claim, [he] would respectfully request plain error review under Rule 30.20." Assuming, *arguendo,* that Defendant's claim is thereby rendered cognizable in this appeal, "[w]e are not required to review for plain error; to do so is within our discretion." *State v. Smith,* 293 S.W.3d 149, 151 (Mo.App. S.D.2009); Rule 30.20.

■ The supplemental motion in this case was filed 42 days after the verdict. The time limitations set forth in Rule 29.11 are mandatory; a "request to add a ground to the motion for new trial [is] a nullity" when it is made after the extension period has expired. *State v. Bartlik,* 363 S.W.3d 388, 391 (Mo.App. E.D.2012) (holding that an untimely oral addition to a motion for new trial made at the hearing was subject only to plain-error review). "Once the time for filing a motion for a new trial has passed, the Missouri rules have no provision for the granting of a new trial based on newly discovered evidence even if the evidence is available prior to sentencing." *Terry,* 304 S.W.3d at 109.

■ Despite the limitation imposed by the rules, the State acknowledges that " 'an appellate court has the inherent power to prevent a miscarriage of justice or manifest injustice by remanding a case to the trial court for consideration of newly discovered evidence *presented for the first time on appeal* [,]' " quoting *Terry,* 304 S.W.3d at 109 (emphasis ours). It argues, however, citing *State v. Nylon,* 311 S.W.3d 869, 876 (Mo.App. E.D.2010), that the new information acquired in this case "is insufficient to warrant a remand[.]" [10]

Defendant's case does not fit the circumstances present in *Terry* because his claim of newly discovered evidence is not being presented for the first time on appeal; it was actually considered and rejected by the trial court, albeit in the form of an untimely motion for new trial. And even though the purported content of the text message was not presented to the trial court, Defendant does not seek a remand for that purpose; he asks instead that this court reverse the judgment outright based upon plain error. Under the circumstances present here, we decline the invitation.

Even if the "new evidence" referenced in the supplemental new trial motion had been included in Defendant's timely-filed new trial motion, the trial court would not have abused its discretion in denying it because Defendant failed to satisfy the second of the following four requirements necessary to obtain a new trial based on newly-discovered evidence:

1. The facts constituting the newly discovered evidence have come to the movant's knowledge after the end of the trial;
2. *Movant's lack of prior knowledge is not owing to any want of due diligence on his part;*
3. The evidence is so material that it is likely to produce a differen[t] result at a new trial; and
4. The evidence is neither cumulative only nor merely of an impeaching nature.

*Terry,* 304 S.W.3d at 109 (emphasis added).

Defendant asserts that because *defense counsel* exercised due diligence when attempting (unsuccessfully) to track down

---

**10.** Both sides in this appeal have devoted considerable argument to the information's perceived value (or lack thereof) as evidence, and the State acknowledges precedent for the proposition that there may be "exceptional circumstances in which impeachment is reason to remand to the trial court to grant a new trial at the appellate court's discretion." *Terry,* 304 S.W.3d at 110.

Victim's sister prior to trial, "the first two factors in support of a finding that newly discovered evidence warrants a new trial have been met." We disagree.

The supplemental new trial motion set forth the pre-trial efforts of defense counsel and her staff to contact the witness—including a notation that "Defendant had indicated that he had a possible phone number for [Victim's sister] but it was never produced[.]" There may be circumstances in which a defendant is helpless to do anything to contribute to the due diligence efforts expended by his counsel in tracking down a particular witness. But that clearly was not the case here. Defendant indicated that he had a possible phone number for Victim's sister, but he did nothing to pass it along to his attorney. Based on Defendant's failure to exercise due diligence in acquiring the information he now asserts would have produced a different result at trial, the trial court would not have abused its discretion in denying Defendant's motion on the merits. Point IV fails.

### Point I—No Plain Error in Sentencing Defendant Per Jury Recommendation

 Defendant's Point I claim is that the trial court committed plain error in imposing a six-year sentence because "[t]he trial court indicated that it believed that it was bound by the jury's recommendation, and had no authority to depart downward from that recommendation." "Plain error review involves two steps. First, the court must determine whether the trial court committed an evident, obvious and clear error, which affected the substantial rights of the appellant." *State v. Beggs*, 186 S.W.3d 306, 311 (Mo.App. W.D.2005). "[T]he second step of plain error review requires the court to determine whether manifest injustice or a mis-

carriage of justice resulted therefrom." *Id.* at 312. "Unless a defendant gets past the first step, any inquiry should end." *Smith*, 293 S.W.3d at 151.

 Defendant "bears the burden of establishing that the trial court committed an evident, obvious and clear error[.]" *State v. Castoe*, 357 S.W.3d 305, 310 (Mo. App. S.D.2012). We agree with the State's assertion that Defendant has failed to do so here.

Defendant correctly maintains that the trial court has the responsibility to reduce the punishment assessed by the jury if the trial court determines that "punishment assessed is greater than, under the circumstances of the case, ought to be inflicted[,]" quoting *State v. Caffey*, 365 S.W.2d 607, 610 (Mo.1963). Section 557.036.5 directs a trial court to "proceed as provided in subsection 1 of this section" following the jury's assessment of punishment "except that any term of imprisonment imposed cannot exceed the term declared by the jury unless the term declared by the jury is less than the authorized lowest term for the offense[.]" Section 557.036.1 directs the trial court to "regard ... the nature and circumstances of the offense and the history and character of the defendant[.]" Defendant asserts that "it appeared that the trial court was unaware that it had the authority [to] sentence below [the] jury's sentencing determination on the basis of [Defendant's] lack of criminal history[,]" citing *State v. Francis*, 60 S.W.3d 662, 670 (Mo.App. W.D.2001).

*Francis* is distinguishable. There, the defendant alleged that the trial court did not consider her motion to reduce sentence because it determined that the basis of the motion—battered wife syndrome—"could properly be considered only if the defendant had pleaded guilty, or at least waived jury trial." *Id.* at 668. The trial court's discussion of the motion included a state-

ment that the arguments that were made in the motion were "'pretty clearly ... matters that would have or should have been raised by a person who would have pled guilty to the charges that have been filed and then requested leniency from the [trial c]ourt at that time.'" *Id.* at 669. The trial court in *Francis* explicitly referenced a guilty plea or accepting responsibility for the offense as a precursor for such a motion *four more times* as it continued to address the defendant's motion. *Id.* It also stated, "If [the defendant] wanted to try the case to me, you could have done so and then the punishment that she would have received would have been whatever I believe to be appropriate." *Id.* In reviewing the case on appeal, the Western District reasoned that while the trial court "did not indicate that it would have imposed a lesser sentence but for the fact of the jury trial" and instead indicated that the jury sentence was appropriate, the trial court's other comments "could have reflected the view that whenever a case goes to a jury trial, and the jury recommends a lawful sentence, that sentence will be imposed." *Id.* at 670. It further found, based on the trial court's statements, that "it also is not entirely clear that the [trial] court believed it had authority to consider the motion[.]" *Id.*

Unlike the trial judge in *Francis,* the trial court here did not repeatedly reference something that precluded it from considering a different sentence than the one recommended by the jury. *Id.* at 668. Nothing the trial court said indicated that it could not consider the matters Defendant had presented for sentencing purposes or that it could not assess a sentence lower than that recommended by the jury. To the contrary, the trial court received "a packet of letters" and heard the testimony of Mother and Defendant before it announced its sentence—a pointless exercise if the trial court believed it had no choice

but to sentence Defendant in accordance with the jury's verdict. The trial court's statement that "[it understood Defendant] has no prior history but that's the sentence the jury gave" did not clearly and obviously indicate that the trial court believed it could not sentence Defendant based upon "the nature and circumstances of the offense and the history and character of the defendant[.]" Section 557.036.1. *Cf. State v. Vaughn,* 32 S.W.3d 798, 800 (Mo.App. S.D.2000) (plain error held to have occurred where the trial court "stated during sentencing that 'I wish there were more I could do for you. The law doesn't allow me to reduce a sentence from a jury recommendation").

Defendant concedes that the trial court did not make an "affirmative misstatement of the law[.]" He instead argues that the trial court's statement during jury deliberations to the effect that jury sentencing was not discussed at "judge school" "because nobody does it" "taken together" with the statement at sentencing "at least indicate that the trial court was 'not entirely clear' regarding its authority to reduce the sentence." We disagree.

Defendant takes the trial court's "judge school" comment out of context; it was a reference to whether the jury should be advised of the requirement that a defendant serve a particular percentage of the sentence imposed. The comment does nothing to plainly indicate that the trial court believed it could not, as a matter of law, reduce the sentence recommended by the jury.

Having failed to prove any obvious and plain error by the trial court, our analysis ends. Point I is denied.

*Point II—No Plain Error in Responses to Jury Questions*

Defendant's remaining point contends the trial court plainly erred in re-

sponding to the jury's questions during sentencing deliberations. In response to the first question—"Are we able to know how much of the time he will serve from what we recommend?"—defense counsel agreed with the trial court that there did not seem to be any law on the matter and voiced no objection to the trial court's announced response: "[T]he law requires that [Defendant] serve a minimum of eighty-five percent of any sentence imposed." In response to the jury's next inquiry—"Will he get credit for time served for being in Jasper County? If so, how much?"—defense counsel affirmatively confirmed that Defendant would receive credit for that time and then stood silent when the trial court asked if the following response was sufficient: "He will get credit for any time spent in custody on this charge. I am not sure of how much time that would be."

The State argues that Defendant has waived even plain-error review because he "acquiesced and tacitly encouraged the response given" by the trial court.[11] In reply, Defendant insists that defense counsel did not acquiesce in the trial court's responses to the jury because she never actually said "no objection."[12]

We need not decide the matter based on either of these assertions because it is readily apparent that even if we exercised our discretion to engage in plain-error review of this point, Defendant could not prevail because he cannot demonstrate that a manifest injustice or miscarriage of justice resulted from the trial court's responses to the jury's questions.

Defendant argues that consideration of " 'extraneous' information not contemplated by the sentencing statute ... caused [the jury] to impose a six-year, rather than a five-year sentence[,]" citing *State v. Atkeson*, 255 S.W.3d 8, 11 (Mo.App. S.D.

**11.** The State relies on *State v. Goudeau*, 85 S.W.3d 126, 128 (Mo.App. S.D.2002), in making this argument. While both *Goudeau* and *State v. Collins* discuss that plain error review was not warranted in those cases given affirmative waivers of objections regarding pertinent jury instructions, the holdings in those cases were narrow. 85 S.W.3d at 128 and 130, 188 S.W.3d 69, 78 (Mo.App. E.D.2006). In *Goudeau*, the court stated, "Because of [the d]efendant's affirmative acceptance and agreement to what the trial court proposed, plain error review is not an option that we will consider." 85 S.W.3d at 130. In *Collins*, the court "decline[d] to exercise its discretion to review for plain error." 188 S.W.3d at 78. *But see State v. Stevens*, 949 S.W.2d 257, 259 (Mo.App. S.D.1997) (defendant sought plain error review and the court held "that [the d]efendant affirmatively waived our review of this issue by indicating that he had no objection to the trial court's proposed response to the jury's question"). Given our supreme court's discussion in *State v. Wurtzberger*, 40 S.W.3d 893, 898 (Mo. banc 2001), that while "no objection" to a proposed instruction "waived appellate review[,]" "[u]npreserved claims of plain error

may still be reviewed under Rule 30.20 if manifest injustice would otherwise occur[,]" the issue may be more precisely viewed as one where the reviewing court elects not to exercise its discretion to engage in plain-error review. *See State v. Bolden*, 371 S.W.3d 802, 805–06 (Mo. banc 2012) (where an instruction submitted to the jury was "jointly proffered" by both sides). In *Bolden*, the Court overruled *State v. Beck*, 167 S.W.3d 767, 777–78 (Mo.App. W.D.2005) insofar as it required a trial court to *sua sponte* correct a defendant's erroneous instruction, stating that "[a]lthough plain error review is discretionary, this Court will not use plain error to impose a *sua sponte* duty on the trial court to correct [the d]efendant's invited errors." 371 S.W.3d at 806.

**12.** Given that the parties clearly had the attention of the trial court for purposes of receiving input on any intended response to the jury's questions, we are reminded of the general proposition that "[a] defendant cannot stand idly by, permitting the giving of an erroneous instruction, and then benefit from his inaction." *State v. Hill*, 970 S.W.2d 868, 872 (Mo.App. W.D.1998).

2008), as support for the proposition that such information is extraneous. Defendant has failed to prove his causation claim. As the State correctly notes, Defendant merely speculates that the jury reached its recommended sentence "simply because it was informed of the 85% rule." The fact that five is mathematically close to eighty-five percent of six does not demonstrate that the jury determined its sentence based on the trial court's answer to its first question. This is especially apparent because the jury was not informed of the amount of credit Defendant would receive toward his sentence based on the jail time he had already served—another issue the jury specifically inquired about. As a result, the jury could not have used any particular formula incorporating the two "extraneous" considerations to determine its sentence recommendation. Point II is also denied, and the judgment of conviction and sentence of the trial court is affirmed.

JEFFREY W. BATES and MARY W. SHEFFIELD, JJ., concur.