

# MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | |
| | ) | WD78163 |
| Respondent, | ) | |
| v. | ) | OPINION FILED: |
| | ) | |
| SCOTT WILLIAM ECKERT, | ) | March 15, 2016 |
| | ) | |
| Appellant. | ) | |

**Appeal from the Circuit Court of Livingston County, Missouri**
**Honorable Thomas Nichols Chapman, Judge**

**Before Division Three:**
**James Edward Welsh, P.J., Thomas H. Newton, J., and Joseph M. Ellis, Sr. J.[1]**

Mr. Scott W. Eckert appeals his convictions under section 575.270[2] for three class C felony victim-tampering counts, for each of which he was sentenced to seven consecutive years of imprisonment. We affirm.

While Mr. Eckert's direct appeal of his forcible rape conviction was pending in 2010 and 2011, he wrote three letters to his teenage niece, asking or reminding her to talk with the victim at family events and convince her to recant and to tell her mother that she was pressured by her grandmother and a

---

[1] Judge Ellis retired as an active member of the court on March 1, 2016, after oral argument in this case. He has been assigned by the Chief Justice to participate in this decision as a Senior Judge.

[2] All statutory references are to RSMo 2000, unless otherwise indicated.

therapist into blaming Mr. Eckert for her injuries.[3]  At the time of the rape, which occurred in 2007, the victim, who is a "step-cousin" of Mr. Eckert's niece and the child of his girlfriend, was seven years old; a vaginal wall tear nearly resulted in her death from bleeding and led to a hysterectomy.  Mr. Eckert's letters urged his niece to get the victim to say that her injuries were caused by jumping on a bed and that she was afraid to tell this version of the event to anyone because she should not have been in the room jumping on the bed.  He reminded his niece of all the fun times they had together in the past and said that if the victim changed her story, it would help to get him home. He also repeatedly cautioned his niece to tell the victim that "she cannot tell anyone that you and her talked about anything at all."  Mr. Eckert's niece did not have that conversation with the victim, and, after her mother discovered one of the letters, all three were brought to the attention of the police.

The State charged Mr. Eckert with three counts of the class C felony of victim tampering under section 575.270.  According to the first amended information, as to each count, based on each letter sent to Mr. Eckert's niece, "the Defendant purposely attempted to dissuade BM, a victim of the crime of Forcible Rape, that was charged as a felony on or about June 13, 2008, from supporting her statements against the defendant."  During the jury trial that

---

[3] Mr. Eckert was also convicted of statutory rape in the first degree, tampering with physical evidence, and two counts of endangering the welfare of a child.  The trial court took judicial notice of the file in the underlying case during a January 2014 pre-trial hearing, noting that the direct appeal had been decided, the mandate had been sent, and that Mr. Eckert's post-conviction review was then pending.  This Court affirmed the convictions in a per curiam opinion dated October 18, 2011. (WD72055).  Mr. Eckert's letters were dated November 9, 2010, June 2, 2011, and possibly June 2011.  His niece recalled receiving one in November and two in June.

2

followed, Livingston County Sheriff Steve Cox read the letters to the jury and testified that, in his experience, a person would care about what a victim said after a conviction while an appeal was pending, as it was here, because "if the victim would recant her statement he could have a new trial and be released." The jury instructions stated that Mr. Eckert could be found guilty of victim tampering, if the evidence showed beyond a reasonable doubt that, among other matters, "the defendant purposely prevented or dissuaded [the victim] from supporting her statements against the defendant and assisting the prosecution of Scott Eckert for the crime of Forcible Rape." The jury returned a unanimous guilty verdict after deliberating for less than one hour.

Mr. Eckert timely filed a motion for judgment of acquittal at the close of the evidence, arguing that the evidence was insufficient to sustain his convictions for tampering with a victim. He preserved his challenge to the trial court's failure to dismiss the charges on the ground that the information did not state an offense by timely filing motions to dismiss, for the trial court to reconsider its denial of his motion to dismiss, for judgment of acquittal at the end of State's evidence, for judgment of acquittal at the close of all the evidence, and for judgment of acquittal, or in the alternative a motion for a new trial.

In the first point on appeal, Mr. Eckert claims that his due process rights were violated by the trial court's overruling of his motion for judgment of acquittal at the close of the evidence because, when he wrote the letters, he had

3

already been tried and convicted for the offenses committed against the victim, thus prosecution of the case had ceased.

When we review a challenge to the sufficiency of the evidence, we accept "as true all of the evidence favorable to the state, including all reasonable inferences drawn from the evidence." *State v. Grim*, 854 S.W.2d 403, 405 (Mo. banc 1993). We reject "all contrary evidence and inferences." *State v. Botts*, 151 S.W.3d 372, 375 (Mo. App. W.D. 2004). We are limited to determining "whether there is sufficient evidence from which a reasonable juror might have found the defendant guilty beyond a reasonable doubt." *Grim*, 854 S.W.2d at 405; *State v. Silvey*, 894 S.W.2d 662, 673 (Mo. banc 1995), *abrogated on other grounds by State v. Porter*, 439 S.W.3d 208 (Mo. banc 2014). "The same standard of review applies when reviewing a motion for judgment of acquittal." *Botts*, 151 S.W.3d at 375. We assess whether any rational fact-finder "could have found the essential elements of the crime beyond a reasonable doubt." *State v. Nash*, 339 S.W.3d 500, 509 (Mo. banc 2011); *see also Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (enunciating the same standard on sufficiency review). We do not "act as a 'super juror' with veto powers, but give[] great deference to the trier of fact." *Nash*, 339 S.W.3d at 509. Nor do we "weigh the evidence anew since the fact-finder may believe all, some, or none of the testimony of a witness when considered with the facts, circumstances and other testimony in the case." *Id.* Statutory interpretation raises a question of law that we review *de novo*. *Id.* at 507.

4

## Legal Analysis

The statute under which Mr. Eckert was convicted states in relevant part:

2.  A person commits the crime of **"victim tampering"** if, with purpose to do so, he prevents or dissuades or attempts to prevent or dissuade any person who has been a victim of any crime or a person who is acting on behalf of any such victim from:
> (1)  Making any report of such victimization to any peace officer, or state, local or federal law enforcement officer or prosecuting agency or to any judge;
> (2)  Causing a complaint, indictment or information to be sought and prosecuted or assisting in the prosecution thereof;
> (3)  Arresting or causing or seeking the arrest of any person in connection with such victimization.

§ 575.270.2. Mr. Eckert argues that he cannot be guilty of victim tampering "if he does not commit any act until after he has already been convicted of the underlying crime." Stated another way, he urges this Court to find that the evidence was insufficient because, under his interpretation of the statute, the prosecution had ceased before he attempted to dissuade the victim from supporting her statements against him. Accordingly, we must determine whether the "prosecution" of an information under section 575.270.2(2) ceases upon conviction. This is a matter of first impression in Missouri.

When we read the victim-tampering statute as a whole, it would appear that the Legislature intended to proscribe conduct that, for the most part, occurs at the earliest stages of a criminal prosecution, that is, interfering with a victimization report, the filing of a complaint or indictment, and arrest. Still, subsection (2) includes dissuading or attempting to dissuade a victim from "causing a complaint, indictment or information to be sought *and prosecuted*,"

5

or "assisting in the prosecution thereof." § 575.270.2(2) (emphasis added). This suggests a longer timeframe than the initial stages of criminal proceedings.

The statute does not define "prosecution," so Mr. Eckert quotes definitions appearing in BLACK'S LAW DICTIONARY,[4] the OXFORD ENGLISH DICTIONARY,[5] WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY,[6] and *Ex parte Bedard*, 17 S.W. 693 (Mo. 1891) (focusing on early stage of proceeding and considering whether a magistrate was disqualified from requiring that relator answer any indictment that might be preferred against him when a request for change of venue had been filed). The court in *Bedard* discussed what constitutes a "prosecution" by quoting the Louisiana Supreme Court, which stated,

> Under our system of criminal law a prosecution has several phases or steps of proceeding; the first being usually an affidavit or charge; next, a warrant of arrest; and so on through the hands of the committing magistrate, whose committal transfers the prosecution to the proper criminal court, where it undergoes the other phases of presentment, arraignment, trial, and conviction or acquittal.

---

[4] "[A] criminal proceeding in which an accused person is tried." *Prosecution,* BLACK'S LAW DICTIONARY 1258 (8th ed. 2004).

[5] "A proceeding either by way of indictment or information in the criminal courts, in order to put an offender upon his trial; the exhibition of a criminal charge against a person before a court of justice." *Prosecution*, OXFORD ENGLISH DICTIONARY 663 (2nd ed. 1991).

[6] "[T]he institution and continuance of a criminal suit involving the process of exhibiting formal charges against an offender before a legal tribunal and pursuing them to final judgment on behalf of the state or government (as by indictment or information)." *Prosecution*, WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1820 (2002).

*Id.* at 694 (quoting *State v. Williams*, 34 La. Ann. 1198, 1199 (1882)).[7] According to Mr. Eckert, these definitions "show that a 'prosecution' is over once the trial is over and judgment has been entered." Because WEBSTER'S defines the term as a process of exhibiting formal charges that are pursued to *final* judgment and because our rules specifically allow post-trial proceedings that can result in a judgment being set aside and the charges re-tried, we are inclined to disagree.[8]

In *State v. Terry*, 304 S.W.3d 105, 112 (Mo. banc 2010), on direct appeal from a conviction for first-degree statutory rape, our supreme court remanded the case to the circuit court for the defendant to file a motion for new trial on the basis of newly discovered evidence, which was apparently discovered after the time for filing a motion for new trial had passed. The defendant's motion for remand, based on DNA evidence purportedly showing that the child he allegedly fathered could not be his, was filed while the case was on direct appeal to the court of appeals, which affirmed. *Id.* at 108. The supreme court granted transfer and took jurisdiction of the motion to remand as well. *Id.* Because the victim, who was pregnant during the trial, testified that the

---

[7] Neither the court in *Bedard* nor Mr. Eckert refers to the definition of "prosecution" that the Louisiana Supreme Court quoted from BOUVIER'S LAW DICTIONARY (1856 ed.): "the means adopted to bring a supposed offender to justice and punishment by due course of law." *State v. Williams*, 34 La. Ann. 1198, 1199 (1882). This is arguably a much broader statement that conceivably encompasses every stage, including post-trial proceedings, such as a direct appeal.

[8] Mr. Eckert's counsel emphasized during oral argument that the finality of the prosecution is at issue in this case, as opposed to the finality of the conviction or judgment, although he did agree that a judgment in a criminal case is not final from a legal standpoint when the trial concludes and a jury reaches its verdict. Because Mr. Eckert argues, however, that his conviction marks the end of a prosecution under the statute, the finality of that conviction is central to the resolution of this issue.

defendant was the only person with whom she had had sex, the supreme court was concerned that the conviction was based largely on perjured testimony, if the DNA results were accurate, and thus acted to prevent a miscarriage of justice, something that it said could be done under "unusual circumstances." *Id*. at 108, 111. *See also Ferguson v. State*, 325 S.W.3d 400, 406-08 (Mo. App. W.D. 2010) (recognizing that while newly discovered evidence—here, recanted trial testimony—may not be considered during post-conviction proceedings under Rule 29.15, it may be appropriate to raise by writ of habeas corpus).

Mr. Eckert was charged with attempting to dissuade the victim from "supporting her statements against the defendant" after he was charged with forcibly raping her. His letters to his niece were sent while the judgment of conviction in his case was on direct appeal. They were written in an unsuccessful effort to have the victim tell a different story to her mother, so that Mr. Eckert could get out of jail and return home. To realize this goal, Mr. Eckert would have to file a motion to remand in the court of appeals so he could file a motion for new trial on the basis of newly discovered evidence. To be most effective, his motion would need the support of the victim's sworn statement recanting any previous statements and, assuming a new trial were granted, the victim would be required to testify, during this prosecution of Mr. Eckert, in a manner that did not support her previously sworn statements against him. While the grant of a new trial on the basis of this "newly discovered evidence" was not certain, this was clearly Mr. Eckert's intention in

8

writing to his niece. To the extent that our rules and case law do not foreclose the possibility of a new trial and prosecution when a defendant seeks one under these circumstances following conviction, we cannot say that a prosecution ceases at conviction.

Further support for our holding that a prosecution does not cease on conviction is found in longstanding case law which recognizes that a defendant's death while his appeal is pending abates the prosecution, i.e., "there was no conviction of him in any of the causes within the contemplation of the law." *State v. Macklin*, 560 S.W.2d 69, 70 (Mo. App. 1977). In *Macklin,* because the case was on direct appeal when the defendant, who had been convicted of two counts of first-degree robbery, died, the court stated, "*During his lifetime, defendant was never finally convicted of the crimes charged* and his death served to abate the prosecutions against him. Consequently, this court has no viable cause before it and the appeal in each involved case is hereby dismissed." *Id.* (emphasis added). *See also State v. Lee*, 580 S.W.2d 563, 564 (Mo. App. S.D. banc 1979) (defendant, who had been convicted of felony rape, died while his appeal was pending; court dismissed appeal, stating, "Because defendant expired *before the crime charged was finally determined*, the prosecution against him wholly abated and there was no conviction of him in the cause." (emphasis added)).

The evidence showed that Mr. Eckert's conviction and sentence were on direct appeal to this Court when he sent letters to his niece clearly showing an

attempt to have the victim recant, i.e., to dissuade the victim from supporting her statements against him and assisting the prosecution. Because his conviction was not final and the prosecution was ongoing, the State proved all of the elements required under section 575.270.2(2) by sufficient evidence. Point one is denied.

In the second point on appeal, Mr. Eckert argues that his fair trial rights were violated by the court's denial of his motion to dismiss for the State's failure to charge an offense because the amended information omitted the essential element of the letters' purpose, and the stated purpose "is not among the possible ways a person can be guilty under section 575.270." Section 575.270 is phrased in terms of "assisting in the prosecution" of a complaint, indictment or information. § 575.270.2(2). As noted above, the amended information, which cited the relevant statute, charged Mr. Eckert with attempting to dissuade the victim "from supporting her statements against the defendant." While the information did not quote the statute, we agree with the State that "supporting her statements" was sufficient to apprise the defendant of the facts that constitute the offense so that he could prepare an adequate defense and was functionally equivalent to "assisting in the prosecution thereof" under the statute. *See Dorris v. State*, 743 S.W.2d 904, 906 (Mo. App. E.D. 1988) (assessing the sufficiency of a charging document, court states, "[T]here is no absolute requirement that the exact statutory language be used; 'words of similar import' will suffice."). Accordingly, the amended

10

information sufficiently charged an essential element of the offense.  Point two is denied.

## Conclusion

Because the charging document was sufficient to apprise the Mr. Eckert of the charges against him and the evidence was sufficient to prove each element under the victim-tampering statute, his fair trial and due process rights were not violated and the trial court did not err in denying his motions.  We affirm.

/s/ THOMAS H. NEWTON
Thomas H. Newton, Judge

Welsh, P.J., and Ellis, Sr. J. concur.

11