

# IN THE MISSOURI COURT OF APPEALS
## WESTERN DISTRICT

| | | |
|---|---|---|
| **STATE OF MISSOURI,** | ) | |
| | ) | |
| **Respondent,** | ) | |
| | ) | **WD79111** |
| **v.** | ) | |
| | ) | **OPINION FILED:** |
| | ) | **November 22, 2016** |
| **CLIFFORD L. WILLIAMS,** | ) | |
| | ) | |
| **Appellant.** | ) | |

### Appeal from the Circuit Court of Jackson County, Missouri
### The Honorable James F. Kanatzar, Judge

### Before Division IV:  Mark D. Pfeiffer, Chief Judge, and
### Karen King Mitchell and Gary D. Witt, Judges

Mr. Clifford L. Williams ("Williams") appeals the Circuit Court of Jackson County, Missouri's ("trial court") denial of his motion for new trial based on newly discovered evidence. We affirm.

### Facts and Procedural History[1]

On March 24, 2012, Jimmy Dean Crawford ("Crawford") and Williams were drinking together at the Calico Cat bar and restaurant.  Crawford asked Williams for a ride home in

---

[1] We view the facts in the light most favorable to the verdict.  *State v. Gray*, 24 S.W.3d 204, 205 (Mo. App. W.D. 2000).

Williams's pickup truck, since they lived two blocks from each other. On the way home, Williams stopped at a QuikTrip, and Crawford went in to purchase several items. As they were leaving the QuikTrip in Williams's truck, Williams collided with another vehicle. Crawford asked Williams if Williams needed him to stay on the scene; Williams said "no," and Crawford left the scene because he was on parole for driving while intoxicated and drinking alcohol was a violation of the terms of his parole.

Sergeant Mike Buffalow, a patrol officer with the Jackson County Sheriff's Department, was working at the QuikTrip as off-duty security. His shift ended at 2:00 a.m. At 1:50 or 1:55 a.m., he was standing inside the door of the store watching the parking lot. He witnessed the collision in the parking lot. Sergeant Buffalow immediately exited the store and approached the pickup truck. The driver's door was open, and the sergeant noticed the individual in the driver's seat (Williams) was slumped over to the right of the steering wheel. Williams was the only person in the truck. The sergeant noticed another man (later determined to be Crawford) walking away from the scene.

When Sergeant Buffalow made contact with Williams, he detected a strong odor of alcohol, and Williams's speech was mumbling and incoherent. The sergeant instructed Williams to place the truck in park, turn off the ignition, and exit the vehicle. When Williams got out of the truck, he had to steady himself using the open door and side of the truck. The sergeant asked Williams for his driver's license, and Williams began moving his hands around his upper body as though he was searching his pockets. Williams had difficulty maintaining an upright position without swaying. Williams did not produce his license. Sergeant Buffalow later confirmed that Williams's driving privileges had been revoked.

Sergeant Buffalow asked Williams if he would submit to a series of field sobriety tests, to which Williams agreed. The results of the field sobriety testing were that Williams exhibited numerous signs of alcohol impairment and, subsequently, Williams was placed under arrest for driving while intoxicated ("DWI"). After Williams was taken to the police department, the sergeant read Williams the implied consent law on the Alcohol Influence Report. Williams refused to take the breathalyzer test.

Williams was charged with the class B felony of DWI as a chronic offender, the class D felony of driving while revoked ("DWR"), and the class C felony of possession of a controlled substance.[2] Two witnesses testified for the State at trial: Sergeant Buffalow and Crawford. Williams did not testify or present any evidence. On March 25, 2014, a jury found Williams guilty as charged. He was subsequently sentenced to ten years' imprisonment on the DWI offense and three years' imprisonment on the DWR offense, to be served concurrently. Williams appealed, and this court held that Williams's sentence was imposed on the mistaken belief that Williams was subject to a minimum term of ten years' imprisonment. *State v. Williams*, 465 S.W.3d 516, 520 (Mo. App. W.D. 2015). We reversed Williams's sentence and remanded the matter to the trial court for resentencing. *Id*. at 520-21.

Upon remand, Williams filed a Rule 29.11 motion for new trial on September 21, 2015. The motion alleged newly discovered evidence of actual innocence. This evidence allegedly would "strongly suggest[ ]" that Williams was not operating the motor vehicle on the evening of March 24, 2012, and that, instead, Crawford was the driver. This evidence did *not* include any evidence of a recantation by Crawford, nor any forensic evidence suggesting that it was not possible for Williams to have been the driver. Instead, the evidence consisted of witness

---

[2] The State subsequently dismissed the possession charge.

statements from Williams's sister and some of his neighbors that Williams had known for years. The gist of the evidence was that Crawford had allegedly made statements implicating himself as the driver (instead of Williams) and the witnesses had other knowledge to impeach and otherwise discredit Crawford's trial testimony.

On October 16, 2015, the trial court held a hearing regarding Williams's resentencing, as well as his motion for new trial. The trial court concluded that Williams's motion for new trial was untimely, had thus presented nothing for review, could not be considered by the trial court, and was thus denied. The trial court did, however, permit the defense to present witnesses "for dual purposes, one being an offer of proof as it pertains to the denial of your motion for new trial as untimely[,] and two as evidence that you want the Court to consider as it pertains to sentencing."

After hearing the evidence and the argument of counsel, the trial court entered judgment, again sentencing Williams to ten years' imprisonment on the DWI offense and three years' imprisonment on the DWR offense, to be served concurrently.

Williams appeals.

## Standard of Review

The jury rendered its verdict in Williams's case on March 24, 2014. Williams filed his motion for new trial on the basis of newly discovered evidence on September 21, 2015, more than a year-and-a-half later. Rule 29.11(b)[3] provides:

> A motion for a new trial or a motion authorized by Rule 27.07(c) shall be filed within fifteen days after the return of the verdict. On application of the defendant made within fifteen days after the return of the verdict and for good cause shown the court may extend the time for filing of such motions for one additional period not to exceed ten days.

---

[3] All rule references are to I MISSOURI COURT RULES—STATE 2016.

4

Initially, we note that even where the motion for new trial is *timely*, "[n]ew trials based on newly discovered evidence are disfavored . . . ." *State v. Stewart*, 313 S.W.3d 661, 665 (Mo. banc 2010) (internal quotation omitted). Here, in addition to the substantive hurdle that Williams faces, he is faced with the additional procedural hurdle that his motion was *untimely* filed almost eighteen months after it was due to be filed. And, Williams does not dispute that he filed his motion after the time to file a motion for new trial under Rule 29.11 had expired; undaunted, he argues that it would be a manifest injustice to refuse to permit him a new trial due to the "new" evidence "exonerating" him from the crime.

"Missouri statutes and rules do not provide a specific means for a criminal defendant to present claims of newly discovered evidence after the time to file a motion for new trial [under Rule 29.11] has expired."[4] *State v. Gray*, 24 S.W.3d 204, 208 (Mo. App. W.D. 2000). "An untimely motion for new trial is not an appropriate means to introduce new evidence." *State v. Dunmore*, 227 S.W.3d 524, 526 (Mo. App. W.D. 2007). Williams's motion was untimely and, therefore, preserves nothing for appeal. *Id.* Procedurally, an untimely motion for new trial is a nullity. *State v. Young*, 943 S.W.2d 794, 799 (Mo. App. W.D. 1997). Nevertheless, an appellate court may conduct plain error review under Rule 30.20 to determine whether "extraordinary circumstances" exist that justify remand for a new trial because of newly discovered evidence presented in a motion for new trial filed out of time. *Dunmore*, 227 S.W.3d at 526.

"Whether briefed or not, plain errors affecting substantial rights may be considered in the discretion of the court when the court finds that manifest injustice or miscarriage of justice has resulted therefrom." Rule 30.20. "Plain error review is used sparingly and is limited to those cases

---

[4] The only formally authorized means to seek relief for a criminal defendant who has raised his claim of newly discovered evidence in an untimely motion for new trial is to apply to the governor for executive clemency or pardon pursuant to the Missouri Constitution. *Gray*, 24 S.W.3d at 208-09.

where there is a clear demonstration of manifest injustice or miscarriage of justice." *State v. McClendon*, 477 S.W.3d 206, 216 (Mo. App. W.D. 2015) (internal quotation omitted).

**Analysis**

Rule 29.11(a) provides that "[t]he court may grant a new trial upon good cause shown." A new trial based on newly discovered evidence is warranted only if the defendant establishes that:

> (1) the evidence has come to the knowledge of the defendant since the trial; (2) it was not owing to want of due diligence that the evidence was not discovered sooner; (3) the evidence is so material that it would probably produce a different result in a new trial; and (4) the evidence is not cumulative only or merely impeaching the credibility of a witness.

*Dunmore*, 227 S.W.3d at 526. Courts have often required that the newly discovered evidence would actually exonerate the defendant. *Id.* However, the Missouri Supreme Court in *State v. Terry* noted that there may be an exceptional circumstance where "impeachment is reason to remand to the trial court to grant a new trial at the appellate court's discretion." 304 S.W.3d 105, 110 (Mo. banc 2010) (discussing *State v. Mooney*, 670 S.W.2d 510 (Mo. App. E.D. 1984)).

In *Mooney*, the newly discovered evidence involved a post-trial taped recantation of the alleged victim's testimony. 670 S.W.2d at 512. In *Terry*, the newly discovered evidence consisted of forensic evidence that would conclusively demonstrate that the alleged victim had perjured herself. 304 S.W.3d at 109-10.

Here, conversely, Crawford has *not* recanted his testimony via affidavit or tape recording; there is no forensic evidence being offered to conclusively establish that Williams could not have been the driver of *his* pickup truck on the evening in question in March 2012, where Williams was discovered in the driver's seat of *his* pickup truck immediately after the vehicular collision; and none of the witnesses (his sister and neighbors he had known for years) were unavailable to him

*prior* to his trial.[5]  Although the evidence that Williams claims to be "new" may have impeachment value, it does not rise to the level of the evidence in either *Mooney* or *Terry*.  Therefore, we conclude that the circumstances of this case do not implicate the sort of "manifest injustice" or a "miscarriage of justice" necessary to support the exercise of discretion to grant plain error review and, hence, we decline to do so.

Point denied.

## Conclusion

The trial court's judgment is affirmed.

_____
Mark D. Pfeiffer, Chief Judge

Karen King Mitchell and Gary D. Witt, Judges, concur.

---

[5] Not so coincidentally, Williams is taking the position in his currently pending Rule 29.15 motion that his trial counsel was constitutionally ineffective for trial counsel's lack of due diligence in discovering this evidence that was readily available prior to his trial.