

# In the Missouri Court of Appeals
## Eastern District
### DIVISION ONE

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | No. ED108193 |
| | ) | |
| Respondent, | ) | Appeal from the Circuit Court |
| | ) | of the City of St. Louis |
| vs. | ) | |
| | ) | Hon. Elizabeth B. Hogan |
| LAMAR JOHNSON, | ) | |
| | ) | Filed: |
| Appellant. | ) | December 24, 2019 |

Before Robert M. Clayton III, P.J., Robert G. Dowd, Jr., J. and Roy L. Richter, J.

PER CURIAM.

This is the first case challenging a conviction based on an investigation by the recently-established Conviction Integrity Unit of the City of St. Louis Circuit Attorney's Office. Following an investigation into Lamar Johnson's 1995 murder conviction, Circuit Attorney Kimberly Gardner filed a motion for new trial claiming there was newly discovered evidence demonstrating his innocence. The trial court—concerned with potential problems arising from this unique scenario—*sua sponte* appointed the Attorney General to appear on the State's behalf. Ultimately, the court found that it lacked authority to entertain the motion for new trial because the State was not permitted to file such a motion and, in any event, it was untimely. The court dismissed the motion, and this appeal followed. Despite the importance of this case of first impression, the orders challenged on

appeal are not appealable. Though we must dismiss the appeal, we transfer the case to Missouri Supreme Court pursuant to Rule 83.02.

### Background

Johnson was convicted after a jury trial in the City of St. Louis on one count of murder in the first degree and one count of armed criminal action for the shooting death of Marcus Boyd. He was sentenced to life in prison without the possibility of parole. Judgment was entered on that conviction and sentence on September 25, 1995. That judgment, and the judgment denying Johnson's Rule 29.15 post-conviction motion after an evidentiary hearing, were affirmed in 1999. *State v. Johnson*, 989 S.W.2d 238 (Mo. App. E.D. 1999) (per curiam). Shortly thereafter, Johnson filed a petition for writ of habeas corpus in federal court, which was denied in 2003. *See Johnson v. Luebbers*, 4:00CV408CAS/MLM (United States District Court for the Eastern District of Missouri). In 2004 and 2005, Johnson sought and was denied writs of habeas corpus in the State courts. *See Johnson v. Dwyer*, 04CV746835 (33rd Judicial Circuit) and *State ex rel. Johnson v. Dwyer*, SC86666 (Missouri Supreme Court).

The Circuit Attorney established the Conviction Integrity Unit in 2017 and began investigating Johnson's conviction in 2018. On July 19, 2019, the Circuit Attorney filed a motion for new trial on behalf of the State pursuant to Rule 29.11 "based upon evidence of prosecutorial misconduct that affected the reliability of the verdict and newly discovered evidence of actual innocence." Alternatively to granting a new trial, the motion requested a hearing on the newly discovered evidence. The motion asserted four grounds for relief: (1) newly discovered evidence of innocence, including the confessions of two other men

who admitted to shooting Boyd and stated Johnson was not involved; (2) newly discovered evidence of perjury by material witnesses, including the sole eyewitness's recantation of his identification of Johnson as the shooter and false police testimony regarding Johnson's alibi location; (3) the State's repeated failure to disclose *Brady*[1] material, including evidence that the sole eyewitness was paid to identify Johnson and another witness's extensive criminal history and incentive for testifying; and (4) the State's knowing presentation of false and perjured testimony at Johnson's trial. Johnson joined and adopted the State's motion for new trial. Shortly thereafter, the trial court—*sua sponte* and initially without explanation—entered an order appointing the Attorney General "to appear on behalf of the State" in this case. The court also ordered briefing on the issue of its authority to entertain the motion for new trial.

The Attorney General and the Circuit Attorney both filed briefs on behalf of the State, but took opposing positions: the Attorney General argued that the Circuit Attorney had no power to file the motion for new trial and the trial court had no jurisdiction to consider it at this late date, and the Circuit Attorney argued that she had a duty to file the motion under these circumstances despite the timelines and the court had implied authority to consider it. Johnson joined the Circuit Attorney's brief. A group of prosecutors from 34 jurisdictions around the country led by the St. Louis County Prosecuting Attorney— many of whom oversee CIUs in their respective offices—filed an amicus brief in the trial court in support of the Circuit Attorney's position.

The trial court ultimately entered an order dismissing the motion for new trial, finding it lacked authority to entertain the motion. The court first addressed whether the

---

[1] *Brady v. Maryland*, 373 U.S. 83 (1963).

State was permitted to file a motion for new trial. It found that Rule 29.11 "is silent as to which party or parties may file such a motion" and found no other authority for the Circuit Attorney to file such a motion on the State's behalf. Regardless, the court said, even if a motion for new trial could be filed by the State, the motion filed in this case was untimely. Rule 29.11 motions, the court noted, are due at most 25 days after the return of the verdict, and this motion was filed decades after the verdict and judgment in this case. The trial court also found that it did not have implied authority to consider the State's untimely motion and it was bound by Rule 29.11 and the timelines therein. The court rejected arguments that those timelines could be waived by the party filing the motion or that they only applied when a defendant filed a motion for new trial. Likewise, the trial court found no merit to the contention that it could review Johnson's conviction under Rule 29.12 because according to *State ex rel. Zahnd v. Van Amburg*, 533 S.W.3d 227, 230 (Mo. banc 2017), a trial court may only review plain errors resulting in manifest injustice or a miscarriage of justice under Rule 29.12 prior to sentencing. Moreover, to the extent CIUs in other jurisdictions have obtained relief for wrongfully-convicted defendants, the court noted they may have been acting under a statute authorizing that relief, citing to numerous provisions from other states permitting a defendant to petition a trial court for relief based on actual innocence. But, the court said, "the Missouri General Assembly has failed to pass such enabling legislation for circuit courts."

In short, the trial court concluded that when the sentence was imposed in this case in 1995, the trial court's jurisdiction over the matter was exhausted and none of the sources cited by the Circuit Attorney provided authority for the trial court to consider a motion for trial at this late date. The court pointed out that Johnson was not without a remedy in this

4

case, noting the possible availability of habeas relief based on his claim that the State failed to disclose exculpatory or impeaching evidence.[2] "In fact," the court added, Johnson "has unsuccessfully sought habeas corpus relief raising many of the same claims he raises here, multiple times."

At the parties' request, the trial court also set forth an explanation for why it had *sua sponte* appointed the Attorney General. The trial court cited its concern about "problematic conduct" by the Circuit Attorney and The Innocence Project, which represented Johnson in these proceeding, noting the improper contact with jurors from Johnson's trial and the potential conflict of interest attending the CIU's review of a previous circuit attorney's conduct. The trial court found it necessary under these unusual circumstances to appoint the Attorney General "to protect the integrity of the legal process." The court clarified that the order appointing the Attorney General did not disqualify the Circuit Attorney or relieve her of any obligations; instead it was meant only to direct the Attorney General to give input on the issue of the court's authority.

Notices of appeal were filed by both the Circuit Attorney on behalf of the State and by Johnson. The Attorney General filed a notice of dismissal of the State's appeal under Rule 30.13. The Circuit Attorney and Johnson opposed the dismissal. Because only the Attorney General "shall appear on behalf of the [S]tate" in appeals, this Court permitted the Attorney General to dismiss the State's notice of appeal filed by the Circuit Attorney. *See* Section 27.050 of the Missouri Revised Statutes. Thus, we are left with only Johnson's appeal, in which the State is the respondent. The Circuit Attorney was allowed to remain

---

[2] It has also been suggested by the Attorney General that another avenue of relief would be for Johnson to seek an executive pardon.

in the case as an intervenor in Johnson's appeal.[3]  The only two rulings Johnson appeals from in this case are the trial court's order appointing the Attorney General and the trial court's order dismissing the motion for new trial.  These orders are not appealable.

## Statutory Authority for Appeal

"No right of an appeal exists without statutory authority."  *State v. Craig*, 287 S.W.3d 676, 679 (Mo. banc 2009).  Section 547.070 governs the defendant's right to appeal in criminal cases:  "In all cases of final judgment rendered upon any indictment or information, an appeal to the proper appellate court shall be allowed to the defendant."  Final judgments occur when the court enters a judgment of guilt and sentence.  *Craig*, 287 S.W.3d at 679.   Here, the final judgment was entered in 1995.  Johnson does not purport to appeal from that 1995 judgment, but from orders of the trial court entered decades later.  "Orders entered in criminal cases after the judgment has become final which deny motions requesting various types of relief are not appealable."  *State v. Payne*, 403 S.W.3d 606, 607 (Mo. App. S.D. 2011); *see also State v. McCauley*, 496 S.W.3d 593, 595 (Mo. App. S.D. 2016) (collecting cases) ("Nearly all rulings after the judgment and sentence are non-appealable).  Because there is no statutory right to appeal these orders, this Court must dismiss the appeal.  *See State v. Smiley*, 478 S.W.3d 411, 414 (Mo. banc 2016).[4]

---

[3] In addition to the parties' and the intervenor's briefs, the Court accepted briefs from the following amici, all of which were filed in support of the Circuit Attorney's position on appeal:  the group of "34 Prosecutors" who filed a brief in the trial court, the "American Civil Liberties Union of Missouri, American Civil Liberties Union Foundation and The Innocence Project" and groups of "Legal Post-Conviction Scholars" and "Legal Ethics Scholars" from law schools around the country.

[4] Contrary to the intervenor's suggestion at oral argument, Section 547.200 does not provide statutory authorization for this appeal.  That statute provides *the State*—not the defendant—the right to appeal.  Because the State's notice of appeal was dismissed, this appeal is before us only on Johnson's notice of appeal.

6

Johnson and the Circuit Attorney assert a number of arguments for why we can and should hear the merits of this appeal, pointing to cases discussing various powers of an appellate court—to determine a trial court's authority, to conduct plain error review and to remand for a new trial under exceptional circumstances. Those various powers are wholly distinct from the statutory right to bring the appeal in the first place, and reliance on the cases discussing them is entirely misplaced.

For instance, Johnson and the Circuit Attorney cite to *Dorris v. State*, which was a consolidated appeal of several post-conviction cases transferred to the Supreme Court, each of which originated in the courts of appeals on appeals from final judgments denying post-conviction motions on the merits. 360 S.W.3d 260, 263-65 (Mo. banc 2012). The courts of appeals had found that the post-conviction motions were untimely, and the question before the Supreme Court was whether the motion courts had authority to decide the merits of an untimely post-conviction motion. The Court noted the distinction between the motion court's constitutionally-based subject matter jurisdiction over "all cases and matters, civil and criminal," and the separate question of the motion court's statutory authority to grant relief in any given case. *Id*. at 265 (citing *J.C.W. ex rel. Webb v. Wyciskalla,* 275 S.W.3d 249, 253 (Mo. banc 2009)). Having concluded that the motion court had subject matter jurisdiction, the Court stated that it too had "subject matter jurisdiction"—citing the constitutional provision regarding appellate jurisdiction—"to determine whether the motion court correctly or incorrectly exercised its authority." *Id*. But the existence of the Supreme Court's *subject matter jurisdiction* in *Dorris* does not answer whether there is *statutory authority* for the right to appeal in this case. The right to appeal was not even

7

addressed in *Dorris*.[5]  Johnson's argument that *Dorris* and *Webb* somehow override the principle that the right to appeal is statutory demonstrates a fundamental misunderstanding of those cases and the difference between constitutional jurisdiction and statutory authority. Both before and after *Webb,* an appellate court must dismiss any appeal that is not authorized by statute, irrespective of the existence of constitutionally-based appellate jurisdiction over the subject matter of the appeal.  *See First Community Credit Union v. Levison*, 395 S.W.3d 571, 576 (Mo. App. E.D. 2013) (applying *Webb* and distinguishing statutory authority for appeal of final civil judgment under Section 512.020 from concept of "jurisdiction").

Equally unavailing is Johnson's and the Circuit Attorney's reliance on a line of cases recognizing that, under certain "exceptional circumstances," an appellate court "has the inherent power to prevent a miscarriage of justice or manifest injustice by remanding a case to the trial court for consideration of newly discovered evidence" discovered while the appeal is pending but after the time for filing a motion for new trial has expired.  *State v. Terry*, 304 S.W.3d 105, 109 (Mo. banc 2010); *see also State v. Mooney*, 670 SW.2d 510 (Mo. App. E.D. 1984); *State v. Williams*, 673 S.W.2d 847, 848 (Mo. App. E.D. 1984).  But that "inherent power" only exists if the case is otherwise properly before the appellate court because there was a statutory right to bring the appeal in the first place.  Because the

---

[5] Notably, the appeals in *Dorris* were filed by the movants from final judgments on the merits of their civil post-conviction motions, not from an order of dismissal entered after a final judgment in a criminal case like here.  Johnson's contention that this order, like the judgments in *Dorris*, "wholly disposed of the underlying case" and therefore is appealable is not well-taken.  He cites civil cases holding that when an order of dismissal has the practical effect of terminating the litigation it can be deemed an appealable judgment, despite not being a "final judgment" as required by the statute governing appeals in a civil case.  *See, e.g, House Rescue Corporation v. Thomas*, 328 S.W.3d 267, 272 (Mo. App. W.D. 2010) (citing Section 512.020). That principle has nothing to do with whether there is a statutory right to appeal the post-judgment orders in this criminal case.

appellate courts in the *Terry, Mooney* and *Williams* were reviewing timely appeals filed by defendants from final judgments of conviction and sentence, they had the prerequisite statutory authority necessary to exercise the inherent power to remand.

Johnson also cites *State v. Williams*, for the proposition that this Court can "always" consider plain errors. 504 S.W.3d 194 (Mo. App. W.D. 2016). Again, like the other cases discussed above, that case was before the appellate court on the defendant's appeal from a final judgment of conviction and sentence. *See id*. at 196. It was the second appeal in the case, the original judgment having been vacated and remanded for resentencing. *Id*. On remand, the defendant attempted to file a motion for new trial based on newly discovered evidence, which was denied by the trial court as untimely. *Id*. The trial court then entered a judgment on the conviction and sentence, and the defendant appealed. *Id*. The appeal was, therefore, from a final judgment of conviction and sentence, which the defendant had the right to appeal under Section 547.070. Because the appeal was properly before the court, it could review the denial of the motion for new trial, although only for plain error since an untimely motion for new trial did not preserve any issues raised therein for appeal. *See id*. at 197. The power to review for plain error, like the "inherent authority" to remand discussed above, depends on whether the prerequisite statutory authority exists for the appeal in the first place.[6]

In short, none of the cited cases answer whether there is statutory authority for the right to appeal in this case.[7] None of the arguments raised by Johnson or the Circuit

---

[6] Johnson also suggests that this Court has a "duty" to correct a manifest injustice under Rule 91.06. That rule—regarding a court's duty to issue a writ of habeas corpus upon being presented evidence that a person is illegally confined—is wholly inapplicable to one's statutory right to appeal.

[7] After oral argument, Johnson called our attention to *Finley v. State*, 2019 WL 6711461 (Mo. App. S.D. December 10, 2019). That case is not relevant to our Court's statutory authority to hear this appeal. We note that Johnson has also filed, based on *Finley*, a motion to recall the 1999 mandate in which this Court affirmed

Attorney overcome the fact that there is no statute authorizing an appeal by the defendant from the post-judgment orders in this criminal case. We are bound by the rules regarding the statutory right to appeal and cannot bend them for the convenience of expediently reaching the merits of the important issues presented in this appeal. To do so would risk disrupting established law, and we "should not, indeed cannot due to constitutional restraints, establish some new rule pertaining to rights of appeal which would be contrary to extant statutory authority." *State v. McCauley*, 496 S.W.3d 593, 596 n. 4 (Mo. App. S.D. 2016) (internal citation and quotation marks omitted).

**<u>Transfer to Supreme Court</u>**

Although we must dispose of this case by dismissal, we nevertheless have the discretion to transfer the case to the Supreme Court:

> A case disposed of by an opinion, memorandum decision, written order, *or order of dismissal* in the court of appeals may be transferred to this Court by order of a majority of the participating judges . . . on their own motion . . . because of the general interest or importance of a question in the case or for the purpose of reexamining existing law.

Rule 83.02.

The issues in this case are undeniably important and include questions fundamental to our criminal justice system: whether and to what extent an elected prosecutor has a duty to correct wrongful convictions in her jurisdiction; whether and to what extent there is or should be a mechanism for her to exercise that duty; whether and to what extent the limitations of any such mechanism (such as the Rule 29.11 timelines) impact a trial court's authority to consider the matter or the statutory right to appeal a trial court's ruling on the

---

Johnson's conviction and the denial of his post-conviction motion in case number ED69212. That motion to recall is pending.

10

matter; and whether and to what extent the Attorney General has or should have a role in that process.    The resolution of these issues is of obvious import and general interest throughout this State.  But the case has also garnered national attention given the numerous jurisdictions with conviction integrity units facing similar questions of significance to the administration of justice in those states.  Moreover, resolution of these issues may require reexamination of existing law.  Under these circumstances, we find transfer appropriate.

## Conclusion

The appeal is dismissed, and the case is ordered transferred to the Missouri Supreme Court.