

# SUPREME COURT OF MISSOURI
## en banc

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | *Opinion issued March 2, 2021* |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | No. SC98303 |
| | ) | |
| LAMAR JOHNSON, | ) | |
| | ) | |
| Appellant. | ) | |

### APPEAL FROM THE CIRCUIT COURT OF THE CITY OF ST. LOUIS
### The Honorable Elizabeth B. Hogan, Judge

Following an internal investigation into Lamar Johnson's 1995 murder conviction,

City of St. Louis Circuit Attorney Kimberly Gardner filed a motion for new trial[1] claiming

---

[1] Johnson belatedly argues this Court should consider the Circuit Attorney's motion for a new trial as if it were, instead, an independent action pursuant to Rule 74.06(d). As the Chief Justice's concurring opinion demonstrates, this Court's precedent simply does not allow the Court to treat a motion for a new trial as an independent action filed under Rule 74.06(d).

Were the Circuit Attorney to follow the Chief Justice's concurring opinion's suggestion and file an independent action pursuant to Rule 74.06, it would not be proper. Rule 74.06(d) "applies only to judgments or orders entered in civil actions." *State ex rel. Nixon v. Daugherty*, 186 S.W.3d 253, 254 (Mo. banc 2006). Further, it is certainly questionable whether the Circuit Attorney could even institute an independent action. § 56.060.1 RSMo 2016; *see also* § 27.050 RSMo 2016.

Though the State has always been the prosecuting "party," the Circuit Attorney's role of appearing on behalf of the State ceased as soon as the circuit court entered final judgment and Johnson appealed. The plain language of Rule 74.06(d) prescribes its procedure applies only to provide relief to parties. Rule 74.06(d) ("This Rule 74.06 does not limit the power of the court to entertain an independent action *to relieve a party from a judgment or order*[.]" (emphasis added)); *see also State ex rel. AJKJ v. Hellman*, 574 S.W.3d 239, 243 (Mo. banc 2019) (noting "the provisions of Rule 74.06(b) are limited to parties[,]" due to the Rule's language that "[t]he court may relieve *a party* or his legal representative from a final judgment or order" (emphasis added)

there was newly discovered evidence demonstrating Johnson's innocence. The circuit court—concerned with potential problems arising from the unique scenario of a local, elected prosecuting attorney filing a motion for new trial more than two decades after the conviction—*sua sponte* appointed the Attorney General to appear on the State's behalf. Ultimately, the circuit court concluded that it lacked authority to entertain the motion for new trial because the State was not permitted to file such a motion and, in any event, it was untimely. The circuit court dismissed the motion. Notices of appeal were filed by both the Circuit Attorney on behalf of the State and by Johnson. The Attorney General filed a notice of dismissal of the State's appeal under Rule 30.13. The Circuit Attorney and Johnson opposed the dismissal. Because only the Attorney General "shall appear on behalf of the [S]tate" in appeals, the court of appeals permitted the Attorney General to dismiss the State's notice of appeal filed by the Circuit Attorney. *See* § 27.050.[2] Thus, the only appeal before this Court is Johnson's appeal.[3]

## Factual and Procedural History

On July 12, 1995, Lamar Johnson was found guilty of first-degree murder and armed criminal action. The St. Louis circuit court sentenced Johnson to life without the possibility of parole on September 29, 1995. The judgment of conviction and the judgment overruling Johnson's Rule 29.15 postconviction motion after an evidentiary hearing were affirmed in

---

(internal quotations omitted)). City Attorney Gardner ceased representing a party to this matter when the circuit court entered final judgment; therefore, she has no authority to seek relief from the judgment pursuant to Rule 74.06(d).

[2] All statutory references are to RSMo 2016, unless otherwise noted.

[3] Substantial portions of this opinion are taken without further attribution from the per curiam opinion issued December 24, 2019, by the Missouri Court of Appeals.

2

1999. *State v. Johnson*, 989 S.W.2d 238 (Mo. App. 1999). Johnson's petition for writ of habeas corpus in federal court was denied in 2003. *See Johnson v. Luebbers*, No. 4:00CV408CAS/MLM (E.D. Mo. 2003). In 2004 and 2005, Johnson sought and was denied writs of habeas corpus in the state courts. *See Johnson v. Dwyer*, No. 04CV746835 (33d Jud. Cir. 2004); *State ex rel. Johnson v. Dwyer*, No. SC86666 (Mo. 2005).[4]

The Circuit Attorney established the Conviction Integrity Unit ("CIU") in 2017 and began investigating Johnson's conviction in 2018. On July 19, 2019, the Circuit Attorney filed a motion for new trial on behalf of the State pursuant to Rule 29.11 "based upon evidence of prosecutorial misconduct that affected the reliability of the verdict and newly discovered evidence of actual innocence." Alternatively, the motion requested a hearing regarding the newly discovered evidence. The motion asserted four grounds for relief: (1) newly discovered evidence of innocence, including the confessions of two other men who admitted to murdering the victim and stated Johnson was not involved; (2) newly discovered evidence of perjury by material witnesses, including the sole eyewitness's recantation of his identification of Johnson as the shooter and false police testimony regarding Johnson's alibi location; (3) the State's repeated failure to disclose *Brady* material, including evidence that the sole eyewitness was paid to identify Johnson, as well as another witness's extensive criminal history and incentive for testifying; and (4) the

---

[4] In his petition for habeas corpus filed in Mississippi County, Johnson argued the court should set aside his conviction, in part, due to newly discovered evidence, recantation of testimony, the use of perjured evidence, and the prosecutor's failure to disclose "crucial exculpatory and impeachment evidence" concerning a witness. All of these claims were previously considered and denied. They are now realleged in Johnson's motion for new trial in this current case.

State's knowing presentation of false and perjured testimony at Johnson's trial.[5] Johnson joined and adopted the State's motion for new trial. Shortly thereafter, the circuit court entered an order appointing the Attorney General "to appear on behalf of the State" in this case. The circuit court also ordered briefing on the issue of its authority to entertain the motion for new trial.

The Attorney General and the Circuit Attorney both filed briefs on behalf of the State but took opposing positions. The Attorney General argued the Circuit Attorney had no authority to file the motion for new trial and the circuit court had no jurisdiction to consider the motion because it was untimely. The Circuit Attorney argued she had a duty to file the motion under these circumstances despite its untimeliness and the circuit court had implied authority to consider it. Johnson joined the Circuit Attorney's brief.

The circuit court ultimately entered an order dismissing the motion for new trial, finding it lacked authority to entertain the motion. The circuit court's order first addressed whether the State was permitted to file a motion for new trial. It concluded Rule 29.11 "is silent as to which party or parties may file such a motion" and found no other authority for the Circuit Attorney to file such a motion on the State's behalf. Regardless, the court's order concluded, even if the state could file a motion for new trial, the motion filed in this case was untimely. Rule 29.11 motions, as duly noted by the circuit court's order, are due no more than 25 days after the return of the verdict, and this motion was filed decades after the verdict and judgment were entered in this case. The circuit court also found it did not

---

[5] There has been no evidentiary hearing or fact-finding by the circuit court in this case concerning the allegations in the motion for new trial because the court concluded it had no authority to entertain the motion and dismissed it.

have implied authority to consider the State's untimely motion and it was bound by Rule 29.11 and the timelines therein. The circuit court considered, but ultimately rejected, arguments that those timelines could be waived by the party filing the motion or that they applied only when a defendant filed a motion for new trial. Likewise, the circuit court concluded there was no merit to the contention that it could review Johnson's conviction under Rule 29.12 because, according to this Court's holding in *State ex rel. Zahnd v. Van Amburg*, 533 S.W.3d 227, 230 (Mo. banc 2017), a trial court's authority to review for plain errors resulting in manifest injustice or a miscarriage of justice under Rule 29.12 is exhausted once the defendant is sentenced.[6]

In short, the circuit court concluded that, when the sentence was imposed in 1995, jurisdiction over the matter was exhausted, and none of the sources the Circuit Attorney cited authorized the circuit court to consider a motion for new trial at this late date. However, the circuit court pointed out that Johnson was not without a remedy in this case, noting the possible availability of habeas relief based on his claim that the State failed to disclose exculpatory or impeaching evidence. The Attorney General also suggested another avenue of relief would be for Johnson to seek an executive pardon.

At the parties' request, the circuit court also explained why it had *sua sponte* appointed the Attorney General. The circuit court cited its concern about "problematic

---

[6] The circuit court explained that "the Missouri General Assembly has failed to pass such enabling legislation for circuit courts[]" to consider claims of innocence from final judgments of conviction. Moreover, to the extent CIUs in other jurisdictions have obtained relief for wrongfully convicted defendants, the circuit court noted they may have been acting under a statute authorizing that relief, citing numerous provisions from other states permitting a defendant to petition a trial court for relief based on actual innocence.

5

conduct" by the Circuit Attorney and The Innocence Project, which represented Johnson in these proceedings, noting the improper contact with jurors from Johnson's trial and the potential conflict of interest from the CIU's review of a previous Circuit Attorney's conduct. The circuit court found it necessary under these unusual circumstances to appoint the Attorney General "to protect the integrity of the legal process." The court clarified that its order appointing the Attorney General did not disqualify the Circuit Attorney or relieve her of any obligations. Instead, it was meant only to direct the Attorney General to give input on the issue of the circuit court's authority.

The Circuit Attorney was allowed to remain in the case as an intervenor in Johnson's appeal. The only two rulings Johnson appeals from in this case are the circuit court's order appointing the Attorney General and the circuit court's order dismissing the motion for new trial.

### Johnson Does Not Have Statutory Authority to Appeal

"This Court has an obligation, acting *sua sponte* if necessary, to determine its authority to hear the appeals that come before it." *First Nat'l Bank of Dieterich v. Pointe Royale Prop. Owners' Ass'n, Inc.*, 515 S.W.3d 219, 221 (Mo. banc 2017). The right to appeal derives solely from statute. *State v. Waters*, 597 S.W.3d 185, 186 (Mo. banc 2020). "If a statute does not give a right to appeal, the appeal must be dismissed." *Id*. Section 547.070 governs the defendant's right to appeal in criminal cases: "In all cases of final judgment rendered upon any indictment or information, an appeal to the proper appellate court shall be allowed to the defendant." Final judgments in criminal cases occur when the

6

court enters a judgment of guilt and sentence. *State v. Craig*, 287 S.W.3d 676, 679 (Mo. banc 2009).

The final judgment in this criminal case was entered in 1995. Johnson does not purport to appeal from that 1995 judgment. He already exercised his right to appeal from that judgment, and the court of appeals affirmed the judgment in an unpublished memorandum. *See Johnson*, 989 S.W.2d at 238. Instead, Johnson appeals the circuit court's order dismissing his motion for new trial, an order entered more than 24 years after he was convicted and sentenced. Section 547.070 is clear that a criminal appeal lies only from final judgments "rendered upon any indictment or information." A criminal judgment is final once sentence is entered. *State ex rel. Fite v. Johnson*, 530 S.W.3d 508, 510 (Mo. banc 2017). "[O]nce judgment and sentencing occur in a criminal proceeding, the trial court has exhausted its jurisdiction. It can take no further action in that case except when otherwise expressly provided by statute or rule." *State ex rel. Simmons v. White*, 866 S.W.2d 443, 445 (Mo. banc 1993). Johnson is appealing an order dismissing a motion the circuit court had no authority to sustain. Likewise, Johnson has no statutory authority to appeal the order in this case.[7] "An appeal without statutory sanction confers no authority upon an appellate court except to enter an order dismissing the appeal." *State v. Smiley*, 478 S.W.3d 411, 414 (Mo. banc 2016) (quoting *Fannie Mae v. Truong*, 361 S.W.3d 400,

---

[7] That Johnson has no statutory authority to appeal the circuit court's order is consistent with court of appeals jurisprudence. *See e.g., State v. McCauley*, 496 S.W.3d 593, 595 & n.3 (Mo. App. 2016) (holding "[n]early all rulings after the judgment and sentence are *non*-appealable" apart from motions under Rules 24.035, 29.07(d) and 29.15, all three of which "are treated as collateral *civil* claims"); *State v. Payne*, 403 S.W.3d 606, 607 (Mo. App. 2011) ("Orders entered in criminal cases after the judgment has become final which deny motions requesting various types of relief are not appealable."); *State v. Goodloe*, 285 S.W.3d 769, 769-70 (Mo. App. 2009).

405 (Mo. banc 2012)); *see also Kansas City Sanitary Co. v. Laclede Cnty.*, 269 S.W. 395, 397 (Mo. banc 1925).

Johnson and the Circuit Attorney assert a number of arguments for why this Court can and should hear the merits of this appeal—to determine a circuit court's authority, to conduct plain error review, and to remand for a new trial under exceptional circumstances. Those various powers are wholly distinct from the statutory right to bring the appeal in the first place and have no place when this Court lacks the authority to do anything but dismiss the appeal.

Johnson and the Circuit Attorney rely on this Court's prior recognition that, under certain "exceptional circumstances," an appellate court has "the inherent power to prevent a miscarriage of justice or manifest injustice by remanding a case to the trial court for consideration of newly discovered evidence" discovered while the appeal is pending but after the time for filing a motion for new trial has expired. *State v. Terry*, 304 S.W.3d 105, 109 (Mo. banc 2010). But that "inherent power" exists only if the case is otherwise properly before the appellate court because there was a statutory right to bring the appeal. In *Terry*, this Court was reviewing a timely appeal from a final judgment of conviction, giving the Court the prerequisite statutory authority necessary to exercise inherent power to remand. *Id.* at 108. In this case, the Court has no such authority.

Johnson also cites *State v. Williams* for the proposition that this Court can "always" consider plain errors. 504 S.W.3d 194 (Mo. App. 2016). Like *Terry*, that case was before the appellate court on the defendant's appeal from a final judgment of conviction. *See id.* at 196. It was the second appeal in the case, the original judgment having been vacated

and the case remanded for resentencing. *Id*. On remand, the defendant attempted to file a motion for new trial based on newly discovered evidence, which the circuit court overruled as untimely. *Id*. The circuit court then entered a judgment of conviction, and the defendant appealed. *Id*. The appeal was, therefore, from a final judgment of conviction, which the defendant had the right to appeal under § 547.070. Because the appeal was properly before the court, it could review the overruling of the motion for new trial, although only for plain error because an untimely motion for new trial did not preserve any issues raised therein for appeal. *See id*. at 197. The power to review for plain error, like the "inherent authority" to remand discussed above, depends on whether the prerequisite statutory authority exists for the appeal in the first place.

It is obvious none of the cited cases address, let alone answer, whether there is statutory authority for the right to appeal in this case. None of the arguments raised by Johnson or the Circuit Attorney overcome the plethora of cases holding the right to appeal is governed by statute. There is no statute authorizing an appeal by the defendant in this criminal case. "This Court should not, indeed cannot due to constitutional restraints, establish some new rule pertaining to rights of appeal which would be contrary to extant statutory authority." *State v. Lynch*, 679 S.W.2d 858, 862 (Mo. banc 1984), *overruled on other grounds by Yale v. City of Independence*, 846 S.W.2d 193, 196 (Mo. banc 1993).

## CONCLUSION

In conclusion, this case is not about whether Johnson is innocent or whether there exists a remedy for someone who is innocent and did not receive a constitutionally fair

trial[8]. This case presents only the issue of whether there is any authority to appeal the dismissal of a motion for a new trial filed decades after a criminal conviction became final. No such authority exists; therefore, this Court dismisses the appeal.

_____

Zel M. Fischer, Judge

Wilson, Russell and Powell, JJ., concur;
Draper, C.J., concurs in part and in result in separate opinion filed and concurs in opinion of Stith, J.;
Stith J., concurs in part and in result in separate opinion filed and concurs in opinion of Draper, C.J.;
Breckenridge, J., concurs in opinion of Stith, J.

---

[8] Nothing in this opinion should be read to conclude that Johnson may not seek relief by filing a petition for habeas corpus in the proper circuit court alleging gateway claims.



STATE OF MISSOURI, )
                                    )
             Respondent, )
                                    )
v. )     No. SC98303
                                    )
LAMAR JOHNSON, )
                                    )
             Appellant. )

**Opinion Concurring in Part and in Result**

I concur with the principal opinion's holding that a motion for new trial cannot be used to set aside Lamar Johnson's (hereinafter, "Johnson") conviction after the judgment against him was affirmed on appeal and the appellate court issued its mandate. I also concur with Judge Stith's concurring opinion, which highlights alternative means from which Johnson could be provided relief. Yet, I write separately because I believe there is another alternative procedure from which a circuit attorney may seek to overturn a wrongful conviction.

This Court's rules provide that, upon a motion, a party or legal representative may seek relief from a final judgment when "it is no longer equitable that the judgment remain in force." Rule 74.06(b)(5). "[T]he procedure for obtaining any relief from a judgment shall be by motion as prescribed in these Rules or by an independent action." Rule

74.06(d). Accordingly, the circuit attorney, who was a party to this case by virtue of prosecuting Johnson, would be allowed to file an independent action seeking relief from the judgment that is no longer equitable.

However, the attorney general disagrees with this position, arguing Rule 74.06 cannot apply to set aside a criminal conviction. The attorney general cites *State ex rel. Nixon v. Daugherty*, 186 S.W.3d 253 (Mo. banc 2006), in support of his belief the circuit attorney may not file an independent action pursuant to Rule 74.06. *Daugherty* is distinguishable factually from the instant case, and the attorney general's argument is not supported by the plain language of Rule 74.06.

In *Daugherty*, *the defendant* filed a petition pursuant to Rule 74.06(d), "seeking to vacate the circuit court judgment denying [him] post-conviction relief." *Daugherty*, 186 S.W.3d at 254. This Court denied relief, explaining that allowing the defendant to seek Rule 74.06 relief would conflict with the purposes of this Court's criminal rules "to provide a prompt method to correct error and to avoid stale claims." *Id*. To the extent *Daugherty* explained it would be duplicative and inconsistent to also permit an action to be brought under Rule 74.06 by a criminal defendant, it clearly was correct because this Court's rules only provide authority for a criminal defendant to correct or amend a judgment. *See* Rule 24.035(a); Rule 29.15(a). Yet, *Daugherty* was not so expansive as to foreclose the possibility of whether another party could bring an independent action to set aside a wrongful conviction, if that party has no other recourse under this Court's rules.

Rule 74.06's plain language does not foreclose the circuit or prosecuting attorney from bringing an independent action in equity when justice so requires. "This Court

2

interprets its rules by applying the same principles used for interpreting statutes." *State ex rel. Richardson v. May*, 565 S.W.3d 191, 193 (Mo. banc 2019) (quoting *Buemi v. Kerckhoff*, 359 S.W.3d 16, 20 (Mo. banc 2011)). Rule 74.06's plain language provides, if a party to an action seeks relief from an inequitable judgment and there is no other avenue provided by this Court's rules, that party may file an independent action in equity. Here, there is no other rule from which the circuit attorney could seek to redress Johnson's judgment of conviction. Accordingly, the circuit attorney should be allowed the opportunity to file an independent action pursuant to Rule 74.06.

Moreover, the attorney general's position in this case is disingenuous. The attorney general previously has used Rule 74.06 to set aside a criminal judgment. *See Bolden v. State,* 106 S.W.3d 579, 580 (Mo. App. W.D. 2003).

While I believe the circuit attorney should be allowed to file an independent action pursuant to Rule 74.06, such an independent action has not been filed. Instead, Johnson and the circuit attorney request this Court treat their motion for new trial as an independent action in equity by looking to the substance of the motion rather than its title or form. Legal documents are judged by their substance and content rather than their titles. *State ex rel. Ashby Road Partners, LLC v. State Tax Comm'n of Mo.*, 297 S.W.3d 80, 84 (Mo. banc 2009). Yet, a motion for new trial cannot be considered a new, independent equitable action. *See, e.g., Chrun v. Chrun*, 751 S.W.2d 752, 755 (Mo. banc 1988).

I recognize my belief the circuit attorney could file an independent action pursuant to Rule 74.06 is not binding on this Court without further litigation. Unless and until the

3

legislature adopts a law authorizing a circuit or prosecuting attorney to file a motion for new trial upon discovery of evidence indicating a wrongful conviction, filing an independent action in equity represents the best (and perhaps only) mechanism by which a circuit or prosecuting attorney may seek to correct a wrongful conviction. One's sense of justice and belief that innocent people should not be imprisoned for crimes they did not commit requires there to be some mechanism for the state to redress an error it helped create. I believe Rule 74.06 is this mechanism.

_____
GEORGE W. DRAPER III, Chief Justice



# SUPREME COURT OF MISSOURI
## en banc

STATE OF MISSOURI,          )
                             )

       Respondent,         )
                             )

v.                          )          SC98303
                             )

LAMAR JOHNSON,          )
                             )

       Appellant.          )

### Opinion Concurring in Part and in Result

Appellant Lamar Johnson and the circuit attorney seek a hearing at which they can present evidence they allege shows Mr. Johnson's conviction for murder was wrongful. They seek to provide newly discovered evidence that the State failed to disclose evidence, in violation of *Brady v. Maryland, 373 U.S. 83 (1963)*, that the murder was committed by someone other than Mr. Johnson—including confessions by the alleged perpetrators—as well as evidence of improper coaching of witnesses and presentation of perjured evidence identifying Mr. Johnson as the perpetrator. Of course, this evidence and Mr. Johnson's allegations have not yet been tested by the State, but it is just such a hearing at which testing can occur that Mr. Johnson now seeks.

I agree with the principal opinion that a motion for new trial cannot itself be used to set aside Mr. Johnson's conviction once the judgment against him was affirmed on appeal

and the appellate court issued its mandate. Rule 29.11 sets explicit time limits for filing a motion for new trial: the motion must be filed within 15 days after return of the verdict, and the defendant may request a single 10-day extension of time. *Rule 29.11(b)*. While Rule 29.11 does not expressly authorize the State to file a motion for new trial, its language is broad enough to so permit, and this Court has recognized in *dicta* the right of a prosecutor to timely seek a new trial.[1] But, whichever party files the motion, it is untimely if not filed within the narrow time limits set by Rule 29.11(b). This is necessary as the overruling of the motion for new trial is the trigger that makes the case final for purposes of appeal under Rule 29.11(c). Because all parties and amici acknowledge, as they must, that Mr. Johnson's and the circuit attorney's motions for new trial were filed decades after the time limits set out in Rule 29.11, the principal opinion correctly holds the circuit court did not err in finding the motions for new trial untimely and not cognizable.

I write separately to respond to the arguments of both Mr. Johnson and the circuit attorney that an exception must be made to the normal timeline for filing a new trial motion because it would be unjust not to provide them both with an avenue to obtain a hearing on their claims that Mr. Johnson's conviction was unjust, and a motion for new trial is the

---

[1] *State ex rel. Norwood v. Drumm, 691 S.W.2d 238, 241 (Mo. banc 1985)* ("In addition to disclosing the reasons warranting dismissal and seeking leave to enter a nolle prosequi, the prosecuting attorney or the defendant may move for a new trial based on newly discovered evidence, seek a writ of error coram nobis, or a writ of habeas corpus based on newly discovered evidence"). And, while the State notes section 547.010, RSMo 2016, refers only to the defendant filing a motion for new trial, such motions are procedural and Rule 29.11 would govern to the extent the rule and statute are inconsistent unless the legislature has enacted a statute specifically directed to that rule and limited to that purpose. *See, e.g., State ex rel. Union Elec. Co. v. Barnes, 893 S.W.2d 804, 805 (Mo. banc 1995)*.

only mechanism realistically available. In support of their argument, Mr. Johnson and the circuit attorney cite this Court's decision in *State v. Terry, 304 S.W.3d 105, 109 (Mo. banc 2010)*, holding that, in exceptional cases, rules governing motions for new trial do not apply when there is newly discovered evidence such as DNA evidence that would seriously impeach and undermine the testimony supporting the conviction. Other cases have reached similar results when the evidence would show extraordinary circumstances or would exonerate the defendant and plain error is shown. *See, e.g., State v. Parker, 208 S.W.3d 331, 334-35 (Mo. App. 2006)*; *State v. Williams, 673 S.W.2d 847, 848 (Mo. App. 1984)*.

Mr. Johnson and the circuit attorney argue the current case falls within the scope of this exception. They are only partially correct. As *Parker* noted, when a motion for new trial or an amendment to that motion is filed out of time, the issue is not preserved but, nonetheless, courts of this state have "recognized that, in 'extraordinary' cases, [an appellate court may] remand the case as plain error pursuant to Rule 30.20 or [under] this [C]ourt's inherent powers so that the defendant can present his new evidence." *208 S.W.3d at 334* (alterations in original) (internal quotations omitted).

Here, as in the cited cases, Mr. Johnson alleges newly discovered evidence, evidence of perjury, and *Brady* violations that, if proved, would result in Mr. Johnson's exoneration. And most or all of this evidence could not reasonably have been known to Mr. Johnson at the time of trial because of the police's or prosecution's alleged complicity in manufacturing false evidence, presenting false testimony, and failing to produce exculpatory evidence.

3

But in the cited cases, unlike Mr. Johnson's case, the direct appeal was still pending before the appellate court, so that court had the jurisdiction to remand the case to the circuit court. Here, however, the appellate court's mandate in Mr. Johnson's case was issued long ago. While that mandate stands, neither this Court nor the appellate courts have jurisdiction to consider Mr. Johnson's motion or to grant him a hearing on his newly discovered evidence in the context of that motion. *See, e.g., State v. Taylor, 1 S.W.3d 610, 611 (Mo. App. 1999)* (explaining an appellate court loses jurisdiction when it issues its mandate to the circuit court).

While a motion for new trial for these reasons is not now available to Mr. Johnson, he can seek the same relief by filing a petition for writ of habeas corpus. This Court often has used habeas corpus to address allegations similar to those made by Mr. Johnson and, when appropriate, has appointed a master to hold hearings on such allegations. Indeed, the attorney general agrees habeas corpus is the obvious and appropriate mechanism by which Mr. Johnson may seek a hearing on his newly discovered evidence.

Yet, as Mr. Johnson notes, he has filed a motion for new trial rather than a petition for habeas corpus because the attorney general, who represents the State in habeas proceedings, has opposed his previous pro se attempts to seek habeas relief, and they have been denied without a hearing. One hopes this will not continue to be the case now that Mr. Johnson has experienced counsel who, together with the St. Louis circuit attorney, have identified additional and more complete facts, which, if proved, would entitle Mr. Johnson to relief. This is particularly true in light of recent precedent from this Court

4

vacating convictions after hearings in the circuit court or by a master when similar

allegations were supported by the record.[2]

The attorney general, nonetheless, argues in this Court that he is required to oppose

Mr. Johnson's attempts to obtain a hearing on his newly discovered evidence. Otherwise,

the attorney general says, he would become an advocate for defendants and would show a

---

[2] In *State ex rel. Engle v. Dormire, 304 S.W.3d 120, (Mo. banc 2010)*, this Court rejected the attorney general's arguments that the defendant's prior *pro se* habeas filings precluded relief on his current petition in which he offered some new impeachment evidence of key state witness not previously rejected on the merits, stating, "Justice requires that this Court consider all available evidence uncovered following [defendant's] trial that may impact his entitlement to habeas relief." *Id. at 126, citing, State ex rel. Amrine v. Roper, 102 S.W.3d 541, 545 (Mo. banc 2003)*; *Kyles v. Whitley, 514 U.S. 419, 436-37 (1995)* (addressing the cumulative effect of excluded evidence in determining if a *Brady* violation occurred). This, of course, follows from the fact that a court's denial of a habeas petition cannot be appealed. Rather, when relief is denied, the petitioner is required to file a new original proceeding seeking relief in the next higher court. *Rule 91*.

That is why, as this Court stated in *State ex rel Nixon v. Jaynes,* "Successive *habeas corpus* petitions are, as such, not barred." *63 S.W 3d 210, 217 (Mo banc 2001)* (although noting "the opportunities for such relief are extremely limited" by the need to show a cause and prejudice, actual innocence, or a lack of jurisdiction or the authority to sentence).

Indeed, Rule 91.22 specifically provides only a single circumstance when a court can refuse to issue a meritorious writ, stating, "When a petition for a writ of habeas corpus has been denied by a higher court, a lower court shall not issue the writ unless the order in the higher court denying the writ is without prejudice to proceeding in a lower court." Otherwise, a litigant is free to seek further habeas relief. *See, e.g., State ex rel. Clemons v. Larkins, 475 S.W.3d 60, 76 (Mo. banc 2015)* ("Moreover, a petitioner may seek habeas relief for procedurally barred claims 'in circumstances so rare and exceptional that a manifest injustice results.'").

The reason for this rule was stated long ago in *In re Breck, 158 S.W. 843, 849 (Mo. banc 1913)*, which held that, unless relief has been granted in a prior writ, "To one deprived of his liberty there is no limit by res adjudicata, or by any other doctrine, to the number of applications which he may make for release by the writ of habeas corpus, except the bare statutory one (section 2442, R. S. 1909), that successive applications must not be made to courts of inferior jurisdiction." *Breck* was cited with approval for this point in *State ex rel. O'Connell v. Nangle, 280 S.W. 2d 96, 99 (Mo. banc 1955)*.

bias in defendants' favor, thereby neglecting his duty to the State. In keeping with this view of the attorney general's role, as Mr. Johnson and the circuit attorney note, while this Court and the court of appeals in the last decade have granted postconviction relief or issued writs of habeas corpus that have vacated the convictions of more than 10 people due to newly discovered evidence or *Brady* violations, in each such case the attorney general opposed relief.[3]

In suggesting it is his duty, and that of the circuit attorney, as representatives of the State, to oppose a request for habeas or similar relief, the attorney general misunderstands the full extent of the prosecution's role in the justice system. The United States Supreme Court has explained that the prosecutor's role is not simply one of being an adversary to the defense. To the contrary:

> [T]he prosecutor's role transcends that of an adversary: he "is the representative not of an ordinary party to a controversy, but of a sovereignty ... whose interest ... in a criminal prosecution is not that it shall win a case, but that justice shall be done."

*United States v. Bagley, 473 U.S. 667, 675 n.6 (1985), quoting, Berger v. United States, 295 U.S. 78, 88 (1935)* (second and third alterations in original). This is the principle

---

[3] *See, e.g., State v. Stewart, 313 S.W.3d 661, 667 (Mo. banc 2010)* (holding newly discovered evidence that another person committed the murder for which the defendant was convicted was credible and warranted a new trial); *State v. Terry, 304 S.W.3d 105, 111-12 (Mo. banc 2010)* (finding newly discovered evidence of paternity was sufficient to demonstrate the witness had perjured herself, requiring the appeal to be dismissed and the case remanded so the defendant could file a motion for new trial); *State ex rel. Woodworth v. Denney, 396 S.W.3d 330, 347 (Mo. banc 2013)* (granting habeas relief due to the State's failure to disclose evidence and communications that prejudiced the defendant); *State ex rel. Hawley v. Beger, 549 S.W.3d 507, 513 (Mo. App. 2018)* (granting habeas relief due to the State's suppression of material evidence resulting in prejudice).

6

underlying the requirement recognized by the Supreme Court in *Imbler v. Pachtman* that prosecutors are "bound by the ethics of [their] office to inform the appropriate authority of after-acquired or other information that casts doubt upon the correctness of the conviction." *424 U.S. 409, 427 n.25 (1976)*; *see also Connick v. Thompson, 563 U.S. 51, 66 (2011)* ("Prosecutors have a special 'duty to seek justice, not merely to convict.'").

This Court has similarly recognized that "the state attorney's role is to see that justice is done—not necessarily to obtain or to sustain a conviction." *State v. Terry, 304 S.W.3d 105, 108 n.5 (Mo. banc 2010)*. Indeed, in the past, the attorney general has joined in postconviction motions and habeas actions when the attorney general believed justice so required. *See, e.g., Brooks v. State, 51 S.W.3d 909, 911 (Mo. App. 2001)* (attorney general conceded error in postconviction action and acknowledged the circuit court should have granted the movant an evidentiary hearing because he alleged unrefuted facts that, if true, showed a right to relief); *Elliott v. State, 31 S.W.3d 463, 464 (Mo. App. 2000)* (same).[4] This Court anticipates and expects the attorney general will apply these principles when called upon to consider whether to oppose a petition for writ of habeas corpus or other pleading filed by Mr. Johnson or others.

Mr. Johnson and the circuit attorney ask this Court to simply treat their motions for new trial as a petition for writ of habeas corpus and permit such a petition to be filed in the circuit where the circuit attorney is located rather than in the circuit where Mr. Johnson is

---

[4] *See also Bonds v. State, 608 S.W.3d 788, 789 (Mo. App. 2020)* (The attorney general conceded error in a Rule 24.035 action and acknowledged that the circuit court's "judgment should be set aside."); *Ewing v. Denney, 360 S.W.3d 325, 329 (Mo. App. 2012)* (involving a habeas action in which "the State concede[d] that Ewing is entitled to the relief he seeks").

detained so the circuit attorney might have authority to join in it. But a writ of habeas corpus directs the person having custody of the defendant to "produce the body" of the defendant to the court. As Mr. Johnson is not being held in St. Louis, the St. Louis circuit court did not err in not issuing a writ of habeas corpus in this case.

For these reasons, I concur in the result of the principal opinion in dismissing the appeal.

_____
**LAURA DENVIR STITH, JUDGE**